### KING et al. v. BARR et al.*

(Circuit Court of Appeals, Ninth Circuit.   January 5, 1920.)

No. 3313.

1. EQUITY ⬤⟶114—INTERVENER CANNOT CHALLENGE JURISDICTION OF COURT.

An intervener cannot challenge the court's jurisdiction, because, if the court is without jurisdiction, the proceedings are void and without effect upon the intervener, and also because equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii) provides that interventions shall be in subordination to and in recognition of the propriety of the main proceeding.

2. JUDGMENT ⬤⟶299(1)—NECESSITY OF CORRECTING DURING CURRENT TERM OF COURT.

Errors in final judgments can only be corrected by appeal, unless steps be taken in the trial court for that purpose during the term in which the judgment was entered.

3. EQUITY ⬤⟶114—INTERVENTION AFTER ENTRY OF FINAL DECREE BARRED BY LACHES.

Where the final decree in a suit involving the receivership of a corporation to satisfy mortgage demands had been entered some six months before a bondholder filed an application to intervene which challenged the validity of the entire proceeding, held, that trial court did not abuse its discretion in denying such petition, with leave to contest the disposal of funds remaining in the receiver's hands, in view of the fact that the petitioner had known of the pending proceeding long before entry of the final decree.

Appeal from the District Court of the United States for the Central Division of the District of Idaho; Frank S. Dietrich, Judge.

Application by E. A. King to file a petition of intervention, in behalf of himself and those who wish also to intervene, against Robert H. Barr and others.   From an order denying the application, the applicants appeal.   Affirmed.

W. C. Bristol, of Portland, Or., for appellants.

Eugene A. Cox, of Lewiston, Idaho, and Richard W. Montague, H. H. Parker, Joseph Simon, Wirt Minor, and John H. Hall, all of Portland, Or., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge.   The present appeal is from an order denying (without prejudice to certain specified rights) the appellant King's application to file a proffered petition in intervention in a suit commenced in the court below November 19, 1915, growing out of the undertaking by the Lewiston Land & Water Company, Limited (hereinafter called the Land Company), a corporation organized under the laws of the state of Idaho, to plant fruit trees upon certain lands adjacent to the city of Lewiston, in that state, the necessary water for the ir-

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
·Rehearing denied February 9, 1920.   Certiorari denied 252 U. S. ——, 40 Sup. Ct. 481, 64 L. Ed. ——.

rigation of which was to be furnished through an extensive water system by a subsidiary water company called Lewiston Sweetwater Irrigation Company, and to sell in small tracts to the public on the installment plan the lands so improved and watered. The money with which to do those things was, at least in large part, procured by borrowing it upon bonds, secured by trust deeds or mortgages, and in part by certain so-called gold notes, likewise secured. At the time of the commencement of the suit, which was brought by a holder of stock in the Land Company named Barr, a resident and citizen of the state of Washington, on his own behalf and in behalf of all other such stockholders similarly situated, the Land Company had outstanding portions of four different issues of such bonds, the first three of which issues were secured by trust deeds or mortgages upon certain specified and distinct portions of the lands, and the fourth covering all of the lands owned by the company, including those embraced by the first three mortgages. In each of the instruments the Idaho Trust Company (hereinafter called the Trust Company, and which was also an Idaho corporation) was made trustee.

In Barr's bill of complaint it was alleged, among other things, that of the lands owned by it the Land Company had then sold 3,320.52 acres in small tracts to purchasers residing in various parts of the United States, for a price aggregating $1,312,236.25, and that there was then owing to it from purchasers and unpaid on contracts of sale approximately $487,115, of which $150,000 was then due and collectible under the terms of the contracts, and that the Land Company still owned 4,054 acres of such lands, of the value of $1,500,000; that the Land Company was then in debt in the aggregate amount of $1,250,000, of which $907,000 was in the form of bonds secured by mortgages or trust deeds made to the defendant Trust Company as trustee, covering the property of the Land Company; that of the first issue of the bonds referred to all but $20,000 had been paid, and of the second issue all but $41,000 had been paid, and that of the third issue there remained outstanding $172,000 in amount; that all of the outstanding bonds of the first two issues had then, "in great measure," been taken up and replaced by the fourth issue of bonds, known as refunding bonds of date October 1, 1911, of which refunding bonds there was then outstanding and in the hands of many holders scattered throughout the United States the amount of $605,000 in the aggregate. It was alleged that the semiannual interest upon the refunding bonds due April 1, 1915, and October, 1, 1915, respectively, was then due and unpaid, and of the principal thereof $25,000 became due and payable October 1, 1915, which likewise remained unpaid, and that the semiannual interest upon the second issue became due and payable October 1, 1915, and was then due and unpaid. It was alleged that the Land Company was also indebted on various notes, accounts, and other obligations in the aggregate amount of $264,000, a large part of which was then secured by various notes, stocks, and other properties of the Land Company, in addition to all of which taxes upon the real property of the Land Company in the amount of $29,000, including penalties and interest, were then delinquent, certificates of such delinquency having been then issued; that the time for

redemption of a considerable part of the property would very shortly expire, to wit, December 15, 1915, and unless provision was made for the payment thereof the title of the property would pass to the purchasers, and be lost to the Land Company and its creditors; that further taxes, with penalties and high rates of interest, would soon accrue and become delinquent, and that the Land Company owed other debts, approximating $7,000, which constituted liens upon its lands superior to the lien of the mortgages and trust deeds; that the Land Company was in imminent danger of insolvency, and that the appointment of a receiver or receivers of its property was essential to the protection of both the company and its creditors.

The defendant Trust Company answered the bill of complaint, admitting most of its averments, and joining in the request for the appointment of a receiver or receivers, and also filed a cross-bill, in which it alleged, among other things, that on or about October 1, 1911, the Land Company issued the refunding bonds in the sum of $1,050,000, chiefly for the purpose of taking up and retiring its previously existing indebtedness, and issued to the cross-complainant, as trustee, the mortgage securing them that has been mentioned, a part of the lands covered by it being subject to the prior mortgages issued by the Land Company to the extent specified in the bill of complaint, and setting forth other reasons why it was necessary for the protection of the property that a receiver or receivers be appointed to take possession and administer the property under the orders of the court, and for such other relief as should be appropriate, including the foreclosure of the mortgages. Two receivers were appointed by the court— one being the president of the Trust Company, who resided at Lewiston, and the other being a resident of Portland, Or., where the Land Company maintained its financial headquarters, by whom funds were obtained for the preservation of the title to the property and the protection of the orchards through the issuance of receivers' certificates.

After referring to the many difficulties experienced by both the court and the receivers in preserving and protecting the property during the years it was under such administration, the court below said in its opinion:

"The suit was brought in the Central division of the district, and was there pending when, on February 9, 1918, in order to facilitate further proceedings, the parties, through their attorneys of record, stipulated in writing that it be tried and a decree entered at Boise, in the Southern division, with the same effect as if tried in open court at Moscow, in the Central division, and pursuant to this stipulation a hearing was had upon the pleadings already referred to and a supplemental answer and cross-bill filed by the Trust Company, and decree was entered at Boise on February 15, 1918. Thereafter, upon March 28, 1918, by stipulation of all the parties, and for the purpose of making certain corrections in the original decree, an amended final decree was signed and filed as of February 15, 1918. It appearing from the supplemental cross-bill that the first and second mortgages had in the meantime been fully paid, and that therefore the fourth mortgage constituted a first lien upon all the lands, except those covered by the third mortgage, the decree in effect determined the total amount of outstanding receivership indebtedness, including the receivers' certificates, allocated to the lands covered by the third mortgage a sum which was deemed to be a just proportion

thereof, and to all other lands covered by the fourth mortgage the balance of such expenses, and authorized the sale of the lands in two corresponding groups, the one subject to the lien of the third mortgage, with directions to apply the proceeds arising from the sales, first, to the payment of the amount of the receivership expenses so apportioned, and, second, to the discharge of the refunding bonds. The receivers were appointed special masters to conduct the sale, and after some delay a sale was reported of the lands covered by the third mortgage, by which only enough money was realized to discharge the receivership indebtedness apportioned thereto, and the same was confirmed upon the acceptance by the bidder of the condition that within a certain designated period the holders of these bonds might, by paying their ratable part of the amount bid, come in and share proportionately in the property purchased. The bid reported for the property under the fourth mortgage was rejected, and a resale ordered, and upon the second sale an offer was received, which was confirmed, after being so modified by requirements of the court as to provide an amount of cash sufficient to pay the balance of the receivership indebtedness, and for the coming in of all bondholders within a designated time and upon specified terms and sharing in the purchase. The last order was made in July, 1918, and thereupon certificates of sale were issued and possession of the property was delivered to the purchasers, and pursuant to the orders of the court the proceeds of the sales were applied to the discharge of the receivership indebtedness.

"On November 2, 1918, three years after the receivers were appointed, and six months after decree, and long after the expiration of the term at which the decree was entered, and at a time when the court was no longer in possession of either the property or the funds arising from the sales thereof, the petitioner, who is the holder of some of the refunding bonds taken by him in exchange for holding of prior issues, informally by mail tendered his proposed bill of intervention, with request for leave to file. During the three years which had elapsed since the commencement of the action many proceedings had been taken by the receivers, and there had been many transactions with third persons, all upon the apparent assumption of the propriety of the suit and of the orders and decrees appointing the receivers, and conferring authority upon them, and confirming their accounts. Moneys were received and paid, contracts were entered into, and titles were passed. With one exception, which has no relation to the questions here involved, during all of this time no bondholder appeared to protest or suggest. So far as appears, the court and its officers and the trustee were permitted to carry the responsibility of working out the perplexing problems as best they could. The petitioner, with his counsel, resided at Portland, where, as already stated, one of the receivers lived, and where much of the business of the company was transacted. It affirmatively appears that he knew of the receivership at a comparatively early date, and in the absence of an averment to the contrary it must be presumed that he had such knowledge practically from the beginning."

Within about a month after the issuance of the refunding bonds and the execution of the mortgage securing them, the petitioner exchanged the bonds of the first three issues held by him for such refunding bonds. The mortgage securing the latter expressly showed, upon its face, that it was designed to provide the funds necessary to pay the then existing indebtedness of the company, and also further funds with which to continue the operations of the company.

[1] The contention made in the assignment of errors, and also in the brief of the appellant, that the court below was without any jurisdiction of the case, is obviously without any merit, first, because, if so, all of its proceedings were absolutely void, and consequently without effect upon the appellant; and, secondly, because it is only in a valid pending proceeding in which any party is under any circumstances

permitted to intervene—equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii) declaring, among other things:

"Any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

Assuming, as we must for the purpose of disposing of the further contentions of the appellant, jurisdiction of the cause by the court to which the application for leave to intervene was made, we find from the record that all of the property in question had been disposed of under and by virtue of the decree of the court made and entered more than six months before the appellant applied to intervene, save only such proceeds thereof as remained in the hands of the receivers and special masters, as to which the court entered the order which is the subject of this appeal and which is in the following words:

"It is ordered that the application of E. A. King (and two others) to intervene be and the same is hereby denied, without prejudice to the right of said applicant, upon making a showing that he is the holder of bonds and that his interests as such holder are or will be affected by the accounts of the receivers or special masters yet to be acted upon, and that he is no longer desirous of relying upon the trustee to protect such interests, to apply for leave to intervene for the purposes of such accounts, and not for the purpose of questioning the validity of the decree or of any order heretofore made."

[2] The final decree was entered at Boise, Idaho, February 15, 1918, and it appears from the affidavit of the petitioner's counsel that the petition for and the accompanying bill in intervention were not delivered to the clerk of the court for the judge until November 2d of the same year, more than six months after the entry of the final decree establishing the rights of the respective parties to the suit, and long after the expiration of the term of the court during which the decree was entered. Nothing is better settled than that errors, if any, in a final judgment, can only be corrected by appeal, unless steps be taken in the trial court for that purpose during the term at which such judgment is rendered. Bronson v. Schulten, 104 U. S. 410, 415, 416, 26 L. Ed. 797, and cases there cited.

The proffered bill of intervention is so voluminous (covering 127 pages of the printed record) that it is practically impossible within the proper limits of an opinion to make even a general statement of its various allegations, the purpose of which is, in part at least, to open up and again try the issues determined by the final decree already entered in the case, necessitating, also, if permitted, the bringing into the suit of new parties.

[3] That the petitioners had ample opportunity to intervene in the suit prior to the entry of the final decree and set up any and every right possessed by them as bondholders (which ownership is the basis of every right asserted in the proposed bill of intervention) we think sufficiently appears from the admitted knowledge by their counsel of the proceedings in the case at least as early as June, 1916, nearly two years before the entry of the final decree.

The record shows that the disposal of a portion of the property as directed by that decree involved the sale of that portion by the trustee, for which a bid was made by a committee of a majority of the holders

of the refunding bonds, and that to hear the parties in interest in regard to that matter the judge of the court below, in part, at least, for the convenience of the parties and their counsel, took the trouble to go to the city of Portland in July, 1918, where two meetings were held before the judge, at the first of which the counsel for the petitioners was personally present, and the second of which he failed to attend—purposely, we can but conclude, from one of the letters to him, printed in his own reply brief on this appeal. That meeting resulted in this order, confirming the sale of the property last referred to, which was filed by the clerk of the court August 10, 1918:

"Order Confirming Sale of Number 4 Properties.

"Now, at this time, coming on to be heard the application of the special masters for an order upon their report and supplemental report in respect of the bids made at the foreclosure sale of the properties of the Lewiston Land & Water Company, Limited, covered by the mortgage known as the Refunding Bond Mortgage or Mortgage No. 4;

"The parties of record appearing by their respective counsel, the masters being present in person, Morris Bros. and John Latta, bondholders, appearing by Wirt Minor, Mrs. E. J. Jeffery, a bondholder, appearing by J. L. Conley, the Security Savings & Trust Company appearing by R. L. Sheppard, and the holders of receivers' certificates appearing by Hon. Joseph Simon and Blain B. Coles; the matter having been set for hearing heretofore and on the 16th day of July, 1918, and having for the convenience of the parties, in order that all might be represented, been continued to this date, the court having heard and considered the reports of the masters and matters presented by counsel and by the various parties represented, and being advised in the premises:

"It is now here ordered that the bid presented by the masters, entitled 'Bid of Refunding Bondholders,' submitted by the bondholders' committee, and approved by W. C. Bristol and Wirt Minor, be accepted in accordance with its terms, except, however, that the bidders shall comply with the following conditions:

"(1) That said bidders pay into court within nine days from this date, to wit, on or before August 3, 1918, the amount necessary to liquidate the outstanding and unpaid receivers' certificates and adjudicated claims, with accrued and accruing receivers' costs and expenses, and the costs and expenses of this proceeding, amounting to $120,000.

"(2) That there be placed in the hands of the masters on or before said time, for delivery to the bidders, a deed of the Lewiston Land & Water Company, Limited, conveying its right, title, and interest in and to the property sold under foreclosure.

"(3) That the said bidders on or before said date file with the masters an assignment to John H. Hall, on behalf of the bondholders under the mortgage known as No. 3 mortgage, given by the Lewiston Land & Water Company, Limited, of the bidders' interest in a one-third part of the spray rigs and orchard and farm machinery purchased with general funds during the course of the receivership, such one-third to be designated and selected by the masters; and authority to the masters to sell, assign, and transfer to the said John H. Hall, representing said bondholders, said one-third of the above-mentioned personal property, the remaining two-thirds thereof to be transferred by the masters' certificate of sale to the bidders.

"(4) It is further ordered that upon compliance with the terms and conditions above set forth by the bidders the sale upon such bid be and thereupon is confirmed, and that upon such compliance the masters be and are hereby authorized and empowered to execute and deliver to the Security Savings & Trust Company, named in said bid as the holder of title thereunder, a certificate of sale of the properties so sold.

"Dated this 25th day of July, 1918.

"Frank S. Dietrich, Judge."

Counsel for the petitioners contends that the recital in the foregoing order of his approval of the bid was without justification and improper. Let that be admitted, and the fact remains that he had the opportunity of objecting to it and failed to do so, and, according to his own affidavit, made no attempt to intervene until about $3\frac{1}{2}$ months after the filing of the order August 10, 1918. The court below was of the opinion that, when the application to intervene was made, the term at which that order was entered had expired, saying:

"The court officers in the Idaho district all reside and maintain their offices at Boise, and courts in the Northern, Central and Eastern divisions are as a rule held open only long enough for the dispatch of business ready for disposition within a few days after court convenes. The terms in the Central division are fixed by law for the second Monday in May and the first Monday in November of each year. Section 78, Judicial Code (Comp. St. § 1063). In 1918 the term was adjourned without day on May 24th. As we have seen by stipulation the cause was transferred for trial and decree and for other purposes, and it is thought that all the parties assumed and acted upon the assumption that all proceedings requisite to the foreclosure and settlement of the receiver's account were to be taken at Boise, where the terms are held open quite continuously. In that view the last orders referred to are to be deemed to have been taken during the February term in the Southern division, and that term expired with the opening of the September term."

We are inclined to agree with the court below in that respect, but, regardless of that view, are of the opinion that the court committed no abuse of the discretion with which it was invested, under the circumstances of the case that have been mentioned, in denying the petitioners' application to file the proffered bill, and in limiting their right to the particulars specified in the order from which the appeal was taken.

The order is affirmed.