WHITTAKER et al. v. BRICTSON MFG. CO. et al. (two cases.)

Nos. 8844, 8883.

Circuit Court of Appeals, Eighth Circuit.

Sept. 10, 1930.

David A. Fitch and William Ritchie, **Jr.**, both of Omaha, Neb. (Holton Davenport and G. B. Braithwaite, both of Sioux Falls, S. D., A. C. R. Swenson and Robert J. Webb, both of Omaha, Neb., and Clarence E. Talbott, of Winner, S. D., on the brief), for appellants.

M. E. Culhane and H. V. Mercer, both of Minneapolis, Minn. (Frank L. Weaver and William M. Giller, both of Omaha, Neb., on the brief), for appellees.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

The appeal in No. 8844 is from a decree of the United States District Court of South Dakota denying the application of appellants et al. to set aside an order of adjudication in bankruptcy as to the Brictson Manufacturing Company and to permit them to intervene and contest the right to such adjudication and to the appointment of a receiver.

Appeal in No. 8883 is from an order of the same court denying the petition and motion of appellants et al. to vacate a decree and judgment entered by default in said court against the Brictson Manufacturing Company on August 3, 1929, in the suit of Frank L. Weaver et al. for attorneys' fees, and to permit them to intervene in said action and make defense on behalf of themselves and the corporation.

Both of these cases were submitted and determined by the trial court at the same time, and as they are intimately connected and the controlling questions in each practically identical, we consider them both in one opinion.

The facts in No. 8844 are as follows: August 3, 1929, one Olaf Eidem filed in the United States District Court for South Dakota, a petition in involuntary bankruptcy against the Brictson Manufacturing Company, a South Dakota corporation, naming as chief creditors, and amounts claimed by them, Frank L. Weaver, William Giller, M. E. Culhane, jointly, $51,000, Olaf Eidem, $3,000, O. A. Brictson, $80,000, and alleging that the assets and property of the bankrupt amounted approximately to $110,000.

Notice was served on George N. Breed, a supposed director of the Brictson Company, a seventy-two year old gentleman living on a farm, who had been so ill for ten months prior to service of notice that it had been impossible for him to move from one place to another without assistance, and who was so little interested in the matter that he did not

advise any officers of the Brictson Company of the service of notice. He had been a director, having been given one share of stock by Brictson in 1923. He attended one meeting of the board of directors in 1923, and since that time had received no notice of any directors' meeting and had attended none prior to September 2, 1929.

No defense was made to the bankruptcy suit, and orders of adjudication and reference were entered on August 21, 1929.

On September 4, 1929, appellants filed a petition and motion to set aside the adjudication of bankruptcy and the order of reference and to be permitted to intervene and contest the claim of insolvency. Attached thereto was a proposed answer subsequently amended by permission of the court.

September 24, 1929, one Anderson and a number of other stockholders of the Brictson Company, including appellant Frank J. Taylor, filed a motion to set aside the adjudication in bankruptcy, to which was attached a proposed answer to the complaint, which answer was subsequently amended by permission of the court.

Both of these petitions and motions, which were considered by the court together, set forth that some of those attempting to intervene were creditors and stockholders; that one was temporary receiver of the Brictson Company, appointed in quo warranto proceedings against that company in a state court of South Dakota; another the state's attorney of the county where the quo warranto proceedings had been carried on. The chief complaint of said proposed pleadings was that George N. Breed was not at the time of service of notice a director of said Brictson Company, and that no valid service was had on any officer or director thereof, and hence the proceedings were without jurisdiction on the part of the court.

The proposed answer denied that the Brictson Company had committed any acts of bankruptcy; that the claim of $80,000 alleged to be due Brictson was spurious; that the attempt of Brictson and wife, pretending to act as officers of the Brictson Company, to file a voluntary petition in bankruptcy after October 5, 1929, was of no force and effect as its charter had been forfeited on October 5th in the quo warranto action of the state of South Dakota.

The District Court issued orders against the said Eidem et al. to show cause why the prayers of the petition and motion should not be granted. A hearing was had in con-

nection with similar claims in case No. 8883, and the court denied the petition and motion.

In case No. 8883, the short facts are these: Frank L. Weaver, William Giller, and M. E. Culhane brought action in May, 1928, in the United States District Court for South Dakota, against the Brictson Manufacturing Company claiming that they had been attorneys for said company in litigation extending over a period of six years; that they had paid out $1,000 for its benefit, and that the reasonable and fair value of their services rendered to it, for which it had agreed to pay, was the sum of $50,000; that the company owed to C. A. Brictson for salary at the rate of $10,000 per year since August 1, 1921; that the debts were greater than the assets, and asked that to prevent irreparable injury a receiver be appointed for the Brictson Manufacturing Company. George N. Breed was served with notice and the return of service stated that he was a director of the defendant company. The facts as to Breed have been referred to heretofore. May 10, 1929, judgment was taken upon default. The final decree filed on August 3, 1929, gave to said Weaver, Giller, and Culhane a judgment for $51,000 against the Brictson Manufacturing Company, which was made a lien upon all the assets of the company, and a permanent receiver was appointed.

So these cases intertwine, for on August 3, 1929, the date of the filing of the final decree by default in case No. 8883, the bankruptcy petition of Olaf Eidem against the Brictson Manufacturing Company in case No. 8844 was also filed, and one of the grounds of bankruptcy was the appointment of the receiver in case No. 8883, while the Brictson Company was insolvent. The other ground for the appointment of a receiver was that the Brictson Company committed an act of bankruptcy by making an assignment to O. A. Brictson of its right, title, and interest to the sum of $9,516.16 with interest, which was in the hands of one West in Nebraska, who was receiver of said Brictson Company under appointment of the United States District Court at Omaha, Neb., and who had been ordered by said court to send the same to the Brictson Company in South Dakota. We may add that our attention has been directed to a decision since this case was submitted of District Judge Munger in the United States District Court for the District of Nebraska [43 F.(2d) 869] holding this assignment ineffective.

September 4, 1929, William Whittaker, who claimed to be a creditor, and others (be-

ing the same parties who filed petition to intervene in case No. 8844), filed petition in case No. 8883 asking to be permitted to file a petition of intervention and a motion to set aside the judgment and the appointment of a receiver. To the proposed petition in intervention was attached an answer to the original complaint, which was subsequently amended.

September 24, 1929, Anderson and other stockholders filed motion to set aside judgment, and asked to be permitted to file petition in intervention. A proposed answer was attached thereto. Practically the same grounds for setting aside the judgment and permitting intervention were stated by Whittaker et al. and Anderson et al. as were stated by them in case No. 8844. The service on Breed was attacked and the tendered answers set forth the various proceedings in quo warranto in the circuit court of Tripp county, S. D., where the court held the Brictson Manufacturing Company had forfeited its charter; the quo warranto action in the district court of Douglas county, Neb., in January, 1924, where a decree was rendered ousting the Brictson Company from the state of Nebraska, on the ground that it was a fictitious and fraudulent corporation, conceived in fraud, and since its birth had been used by Brictson to defraud the public by selling worthless stock of the company. The decision of the United States District Court in Nebraska that these same attorneys were not entitled to a lien upon the funds of the Brictson Manufacturing Company was also set forth. These pleadings asserted that the action was commenced with the knowledge of Eidem and the consent of Brictson for the purpose of avoiding the effect of decrees in the quo warranto proceedings; that the appointment of a receiver in case No. 8883 was fraudulent and was done for the purpose of having an act of bankruptcy upon which to predicate the involuntary petition in bankruptcy; that the suit in bankruptcy and the suit for attorneys' fees were schemes to defraud not only the interveners, but the United States District Court of Nebraska and South Dakota, the district court of Douglas county, Neb., and the circuit court of Tripp county, S. D., and to unjustly and deliberately secure all the property of the Brictson Company for Eidem, Brictson, Weaver, Giller, and Culhane to the damage of the creditors and stockholders. The grave charges made in these various motions to set aside the judgments and in the proposed petitions of intervention are of such nature that it would seem some court of competent jurisdiction should pass thereon.

Motions to dismiss the appeals in this court were presented by appellees. In view of our conclusions we refrain from discussing them.

It is unnecessary to review the litigation that has taken place, beginning in 1923, with reference to the affairs of the Brictson Company. It is an unpleasant chapter in the judicial history of this circuit. On the one side it has been claimed by some of the stockholders and creditors that the Brictson Company was a fictitious and fraudulent concern, organized and controlled by O. A. Brictson, and engaged in selling worthless stock to innocent people, and on the other side, that there has been a deliberate attempt on the part of a few disgruntled creditors and stockholders to wreck a perfectly good institution. A contest of this character naturally engendered much prejudice and feeling, and resulted in extended litigation, which heretofore has been confined largely to Nebraska, but now seems to have spread to South Dakota. It is apparent that the Brictson Company, in view of its rather tempestuous existence, as evidenced by the numerous lawsuits in federal and state courts, with which this court is familiar, was willing to seek peace in the repose of bankruptcy, either voluntary or involuntary. It made no effort to contest the bankruptcy case. It is now claimed it had no knowledge thereof. The records of that corporation show that its officers, who seemed to be managing the same (Brictson and his wife), really desired bankruptcy, and concluded its interests were in permitting the bankruptcy adjudication to stand unquestioned by the corporation, and it in fact filed a voluntary petition after the court's order of adjudication.

Complainants in case No. 8883 had been denied a lien upon the funds of the Brictson Company for attorneys' fees in the United States courts. Culhane v. Anderson (C. C. A.) 17 F.(2d) 559. They brought this suit in South Dakota, where the Brictson Company had its place of business, and secured judgment by default for $51,000 and a lien on the funds of the Brictson Company.

We think it apparent, in view of the argument filed here by counsel for the Brictson Company against setting aside the judgment, that it would not have defended the bankruptcy case or the one for attorneys' fees if it had known of them. We are unable to understand why a company would refuse or

neglect to take any steps to set aside a judgment of $51,000 against it secured by default.

■ It is a well-settled principle of equity jurisprudence, as said by this court in Ogden et al. v. Gilt Edge Consol. Mines Co. et al., 225 F. 723, 728, "That stockholders of a corporation may, in equity, either sue for or defend on behalf of the corporation, if the directors fraudulently fail to do so, or where they are the beneficiaries of the action." In re Swofford Bros. Dry Goods Co. (D. C.) 180 F. 549; Bronson et al. v. LaCrosse & Milwaukee Co. et al., 2 Wall. 283, 17 L. Ed. 725; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L. Ed. 815; Doctor v. Harrington, 196 U. S. 579, 25 S. Ct. 355, 49 L. Ed. 606; Delaware & Hudson Co. v. Albany & Susquehanna R. R. Co., 213 U. S. 435, 29 S. Ct. 540, 53 L. Ed. 862; United Copper Co. v. Amal. Copper Co., 244 U. S. 261, 37 S. Ct. 509, 61 L. Ed. 1119.

■ Where it is apparent, as it is here, that a request to the directors to defend an action would be futile, such request is not necessary to entitle stockholders to intervene and defend.

■ Equity Rule 27, which provides how and when actions may be brought by the stockholders, would not apply "when the interests of the directors are antagonistic to those of the corporation, where this fact is shown by the pleading." Ogden et al. v. Gilt Edge Consol. Mines Co. et al., supra; United Copper Co. v. Amal. Copper Co., 244 U. S. 261, 37 S. Ct. 509, 61 L. Ed. 1119; Atlantic Refining Co. v. Port Lobos Petroleum Corp. (D. C.) 280 F. 934.

If the only question here were the naked legal right of the stockholders, under such allegations of collusion, fraud, or bad faith on the part of the directors as are found in the proffered pleadings, to defend the action in bankruptcy and the action for attorneys' fees, the cases would present a minimum of difficulty.

■ If we could see any legal way in which we could, without doing violence to well-established rules of equity, set aside these judgments and permit the interveners to contest the question of insolvency and the amount of the attorneys' fees, we would do so, but in the condition of this record our hands are tied by Equity Rule 37. The part applicable is, "Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding." This rule has the same effect as a statute. Rhinehart v. Victor Talking Mach. Co. (D. C.) 261 F. 646; King et al. v. Barr et al. (D. C.) 262 F. 56; Leaver et al. v. K. & L. Box Lumber Co. (D. C.) 6 F.(2d) 666.

■ Intervention, which rests upon Equity Rule 37, is not a matter of absolute right in every instance, as pointed out by this court in Palmer v. Bankers' Trust Co., et al., 12 F.(2d) 747, 752. Intervention may, however, be a matter of right, as stated in the same case, "where the petitioner, not being already fairly represented in the litigation, is asserting a right which would be lost or substantially affected if it could not be asserted at that time and in that form. In such cases the right of intervention is often termed absolute." United States Trust Co. of N. Y. et al. v. Chicago Terminal Transfer R. Co. et al. (C. C. A.) 188 F. 292; Central Trust Co. of N. Y. v. Chicago, R. I. & P. R. Co., et al. (C. C. A.) 218 F. 336; Glass v. Woodman et al. (C. C. A.) 223 F. 621; Credits Commutation Co. v. United States, 177 U. S. 311, 20 S. Ct. 636, 44 L. Ed. 782. While intervention under some circumstances may be a matter of right, if properly presented to the court, it is generally a matter of sound legal discretion exercised in line with recognized judicial standards in the interest of justice. If the court has abused its discretion the appellate court may review its order. Rule 37 provides that there may be an intervention, which of course implies discretion on the part of the court. If intervention is sought either as a matter of right or of discretion, it must be in "subordination to, and in recognition of, the propriety of the main proceeding." In Re Veach, 4 F.(2d) 334, 336, this court said: "It is our opinion that Veach cannot be permitted to evade the explicit command of equity rule 37. He can be admitted as an intervener in the Adler suit only in recognition of and subject to the requirements of that rule. It says that any one who is permitted to intervene in a suit shall do so in subordination to and in recognition of the propriety of the main proceeding. Counsel frankly admits here that his only purpose is to launch an attack against the propriety of all of the proceedings in the Adler suit, and the petition which he tendered to the clerk shows upon its face that that was his sole purpose." In Union Trust Company v. Jones (C. C. A.) 16 F.(2d) 236, 239, the court said: "It could not intervene in and seek the aid of the court and at the same time attack and dispossess the court of its jurisdiction to proceed with the litigation

in an orderly way." In Board of Drainage Com'rs v. LaFayette Southside Bank of St. Louis (C. C. A.) 27 F.(2d) 286, 296, the court said: "This rule, in plain terms, permits intervention in subordination to, and in recognition of, the propriety of the main proceedings, hence to seek to intervene with the view of challenging the jurisdiction of the court, or otherwise inaugurating litigation not within the scope and purview of the original suit, is not permissible, and should be denied." In Mueller et al. v. Adler et al., 292 F. 138, 139, this court holds that under Equity Rule 37 an intervention for the purpose of attacking the jurisdiction of the court in the main suit is not permissible, and that a motion by an intervener to dismiss the main bill cannot be entertained. The court says: "The relief sought by the prayer is, in its entirety, purely an attack upon the jurisdiction of the court in the main suit wherein this petition was filed as an intervention. The order allowing an intervention of this character to be filed was improvidently granted in violation of general equity rule 37 * * * which requires that all interventions 'shall be in subordination to, and in recognition of, the propriety of the main proceeding.'" We quote from 11 Encyclopedia of Pleading and Practice, pp. 509, 510: "An intervener in a suit between other parties must accept such suit as he finds it, and is bound by the record of the case at the time of his intervention. He cannot raise an issue as to whether the proceedings are regular, nor can he plead exceptions having for their object the dismissal of the action. He cannot raise new issues in the suit, nor insist upon a change in the form of the proceeding. An intervener cannot exercise any rights which are limited to the parties to the action." Cauffiel v. Lawrence (D. C.) 256 F. 714; King et al. v. Barr et al. (C. C. A.) 262 F. 56; O'Connell v. Pacific Gas & Electric Co. (C. C. A.) 19 F.(2d) 460; Adler v. Seaman et al. (C. C. A.) 266 F. 828; Brictson Mfg. Co. v. Woodrough, District Judge (C. C. A.) 284 F. 484; State of North Carolina v. Southern Ry. Co. (C. C. A.) 30 F.(2d) 204.

If the proposed interventions here were not in subordination to the main actions and did not recognize the propriety of the same, there could be no abuse of discretion in the action of the trial court in refusing to set aside the judgments to permit filing the same. The trial court in its opinion stated: "It will be noted that the petitioners have not asked that they be permitted to file their proposed answer in intervention unless and until the adjudication in the bankruptcy case, and the

decree in the Equity Case No. 312, has been set aside and held for naught, and subsequent thereto proper service shall be had. In view of this it is manifest that the question as to whether the petitioners shall be permitted to intervene and file their answers to the petition is not at this time before the Court," which indicates that the court thought the question as to whether interveners should be permitted to intervene and file answer was not before it. Of course, if petitioners were entitled to intervene as a matter of right or of sound legal discretion, the adjudication and the judgments should have been set aside. So the main question, after all, is that of the right to intervene.

To show just what the proposed interveners claimed, we quote from the petition of intervention, motion to show cause and to set aside judgment and appointment of receivers in No. 8883 as follows: "These interveners further pray that after said hearing shall be had judgment in favor of the complainants herein in the sum of $51,000.00 and said orders of May 10 and August 3, 1929, be set aside and held for naught and the petition of the said complainants be dismissed at the petitioner's cost, and further directing that in the event that said petitioners shall obtain proper service of subpoena in the above entitled cause that these interveners be permitted to file an answer to said complaint, and to defend on behalf of said The Brictson Manufacturing Company, a copy of said proposed answer being attached hereto and marked Exhibit 'C.'"

Article XIII thereof reads as follows: "That said judgment in favor of the said Weaver, Giller and Culhane in the sum of $51,000.00 and the appointment of the said receiver on said 3d day of August, 1929, as aforesaid were void and unlawful for the reason that this court had no jurisdiction over the defendant, The Brictson Manufacturing Company, and for the further reason that said appointment was procured through the false and fraudulent representations made to this court, all as aforesaid, and in pursuance of said false and fraudulent conspiracy."

From proposed petition of intervention in No. 8844: "These interveners further pray that after said hearing shall be held on said order to show cause that said order of adjudication and said order of reference entered in this cause on the 21st day of August, 1929, shall be set aside and held for naught and for an order directing that if proper service shall be subsequently had upon the said bankrupt that these interveners shall be

permitted to file as an answer to the petition of the said Olaf Eidem, the answer, a copy of which is attached hereto and marked Exhibit 'C'; for their costs and attorney fees herein expended and for the costs of this suit."

It is apparent that the relief asked by interveners is not only to set aside the order of adjudication and the judgment for attorneys' fees, but either to dismiss the complaints or to require further service of notice to be made before any answers need be filed. They stood on the proposition that the court had no jurisdiction in either case by virtue of the failure to serve notice on any other than Breed. They did not ask to intervene unless a new notice should be served after the judgments were vacated. They do not attempt to come into the case as interveners in subordination to the main proceedings, but in defiance thereto. To seek to set aside the entire proceedings in a case and to have the same held for naught on the ground that they were absolutely void cannot be in recognition of the propriety of the main suit. We are forced somewhat reluctantly to the conclusion that appellants come under the prohibitions of Equity Rule 37. Appellants are not without remedy in an independent action to seek to set aside the judgments for want of jurisdiction, fraud, or other grounds of equitable relief.

In Credits Commutation Co. v. United States, 177 U. S. 311, 20 S. Ct. 636, 44 L. Ed. 782, it was held that where leave to intervene in an equity case was refused it did not amount to a final determination of the merits of the claim on which the proposed intervention was based, and that the petitioner could assert his rights in any other appropriate form of procedure.

That courts of equity entertain bills to set aside judgments obtained by fraud, or where it would be unconscionable to enforce the same, is well established. Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Metcalf v. Williams, 104 U. S. 93, 96, 26 L. Ed. 665; Knox County v. Harshman, 133 U. S. 152, 10 S. Ct. 257, 33 L. Ed. 586; Marshall v. Holmes, 141. U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Pickford v. Talbott, 225 U. S. 651, 32 S. Ct. 687, 56 L. Ed. 1240.

While we feel compelled in view of Equity Rule 37 to sustain the judgment of the trial court in both cases, we do so without prejudice to the right of appellants to bring original actions to set aside either or both of these judgments or decrees. Let an order of affirmance be entered in both cases.

Affirmed.