## MILLER et al. v. PYRITES CO., Inc., et al.
### No. 3647.

Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

William L. All, of Baltimore, Md. (William F. Allen, of New York City, on the brief), for appellee Pyrites Co., Inc.

G. Ridgely Sappington, of Baltimore, Md. (Wilson K. Barnes, of Baltimore, Md., on the brief), for appellee Chester F. Hockley, receiver.

Before PARKER, and NORTHCOTT, Circuit Judges, and PAUL, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought in the District Court of the United States for the District of Maryland by the Pyrites Company, Inc., a Delaware corporation, against the Silica Gel Corporation, a Maryland corporation. The bill of complaint was filed on April 17, 1933, and alleged, in substance, that the plaintiff was a creditor of the defendant corporation on an unsecured claim, in the nature of an open account, in the amount of $25,626.46; that the total indebtedness of the defendant corporation was in excess of $3,000,000, and that its principal assets consisted of numerous patents and processes with regard to a colloidal silica which adapts absorption or capillary attraction to commercial uses and which is designated and known generally in commerce and in the arts by the defendant's trade-name "Silica Gel"; that the condition of its affairs was such that it was necessary that a receiver should be appointed to conserve the assets, and ultimately to liquidate them for the benefit of all concerned; and that the suit was brought on behalf of all creditors who cared to join in it.

On April 22, 1933, the answer of the defendant corporation was filed, admitting the allegations of the bill; consenting to the relief prayed and admitting the claim of the plaintiff to be due in an amount exceeding $3,000, but reserving the right to demand strict proof, and to contest any and all claims of indebtedness of others and of the plaintiff beyond the amount admitted.

On April 22, 1933, the same day, a petition was filed on behalf of C. Wilbur Miller and Ernest B. Miller, as minority stockholders and minority directors, and also as officers of the defendant corporation, asking leave to intervene, and stating that the existing situation with regard to the affairs of the corporation was such that it was desirable, if not necessary, to have a receiver appointed; that the receiver should be appointed to hold the assets of the defendant together and to keep it as a going concern, but that there should be no sale of the assets. The petition for in-

tervention also denied the indebtedness of the defendant to the plaintiff, and denied that the defendant was indebted in the amount of anything like $3,000,000. The petitioners were allowed by order of court to intervene. Mr. C. Wilbur Miller was president of the defendant corporation and also a director and one of the three voting trustees under a voting trust agreement for holders of trust certificates for stock of the defendant corporation. Mr. Ernest B. Miller was operating vice president of the defendant corporation. Both Millers had held these positions since the organization of the company, in 1921, and together owned certificates for between 90,-000 shares and 100,000 shares of the approximately 675,565 shares of common stock, without par value, of that corporation's issued stock.

On the same day (April 22, 1933), the court entered an order appointing Chester F. Hockley as receiver of the defendant corporation, with the usual powers. Hockley was also the receiver of the Davison Chemical Company, the largest creditor of the defendant corporation. At the hearing at which the receiver was appointed, counsel representing the Millers consented to the appointment of the receiver and did not object to the appointment of Hockley, but suggested to the court that Mr. Ernest B. Miller be made a co-receiver. This suggestion the court did not accept, stating that it was not his policy to appoint a managing official of a company that was in financial difficulties as receiver, but the court stated that he would be glad to receive the suggestion of other names, satisfactory to the court, as a coreceiver. No such suggestion was made.

On May 12, 1933, the Millers filed an answer and at the conclusion of their answer they prayed that the bill of complaint be dismissed.

On July 13, 1933, after a hearing on a motion made on behalf of the defendant on May 31, 1933, to strike out this answer on the ground that it violated General Equity Rule No. 37 (28 USCA § 723), the court sustained the motion on the ground that the answer was not in subordination of the main purpose of the equity case. The Millers, as interveners, were granted leave to file an amended answer which was done on July 17, 1933; the amended answer alleged in substance that the action of the majority of the board of directors in consenting to the receivership was fraudulent and collusive, and finally prayed: (1) That the complainant's cause of action be transferred to the law side of the court for trial and determination by a jury; (2)

that further proceedings in the receivership be suspended and held, except such as were necessary to maintain the business of the defendant as a going concern, and to maintain the contracts for silica gel and licenses theretofore issued for processes for use; (3) that after the determination of complainant's cause of action by a jury trial on the law side of the court, further proceedings therein should then be ordered.

On July 29, 1933, there was filed a petition of Messrs. O. E. Merrell and Edwin H. Brown for leave to intervene, they describing themselves as stockholders owning in excess of 1,600 shares of the outstanding common stock of the defendant corporation. An order was entered allowing the intervention of these last-named petitioners.

On September 15, 1933, the receivers petitioned for an order of court requiring the officers of the defendant corporation to assign its patents to the receiver, to enable him properly to administer the receivership estate. On the same day an order was signed requiring them to show cause why they should not make the assignments, and on September 29, 1933, the answer of certain officers and directors, submitting to that order of the court, was filed.

On September 30, 1933, Messrs. C. Wilbur Miller and Ernest B. Miller filed an answer showing cause against the assignment of the patents, and renewing their contention as previously asserted with regard to the right to a jury trial, and the lack of the jurisdiction of the court. On September 30, 1933, a similar answer was filed on behalf of O. E. Merrell and Edwin H. Brown, opposing the order for the assignment of patents. On October 6, 1933, O. E. Merrell and Edwin H. Brown filed an answer to the original bill of complaint.

After numerous motions were made by attorneys representing both the plaintiff and the defendant and the interveners, the court heard the various motions and the evidence with regard to the claim of the plaintiff company and on October 19, 1933, the court entered an order denying the petition of all the interveners to have the complainant's claim referred to the law side of the court for trial by jury and denying the motion of the interveners, the Millers, to dismiss the bill of complaint and on the same day entered another order allowing the claim of the Pyrites Company for the sum of $25,626.46, without interest. From this first order the interveners, the Millers, appealed and the interveners Merrell and Brown appealed from both orders.

In the meantime, pursuant to notice properly given, the claims of eighty-five creditors totaling in all $3,946,582.04, had been filed and the claims of two creditors had been filed, not in the stated amount of dollars, but in francs and pounds, one being for 51,620 francs and the other for 1,459 pounds, 1 shilling, and 8 pence.

In considering the appeal of C. Wilbur Miller and Ernest B. Miller from the first order entered, which order denied the motion of the Millers to dismiss the bill and also denied the motion to have the plaintiff's claim referred to the law side of the court for trial by a jury, we are of the opinion that this decree was interlocutory and therefore not appealable. All of the decisions we have found are to the effect that an order denying a motion to dismiss is interlocutory. In Cox v. Graves, Knight & Graves, Inc., 55 F.(2d) 217, 218, Judge Parker, of this court said:

"It is clear that the motion must be allowed. Our appellate jurisdiction rests upon section 128 of the Judicial Code (28 USCA § 225), and, with certain exceptions not here material, it extends only to final decisions of the court below, and the order appealed from is not a final decision. A final decision is one which 'puts an end to the suit, deciding all the points in litigation between the parties, leaving nothing to be judicially determined, with nothing remaining to be done, but to enforce by execution what has been determined.' France & Canada S. S. Co. v. French Republic (C. C. A. 2d) 285 F. 290, 294; U. S. v. Bighorn Sheep Co. (C. C. A. 8th) 276 F. 710. 'When a decree finally decides and disposes of the whole merits of the cause, and reserves no further questions or directions for the future judgment of the court, so that it will not be necessary to bring the cause again before the court for its final decision, it is a final decree.' Beebe v. Russell, 19 How. 283, 285, 15 L. Ed. 668; Steel & Tube Co. of America v. Dingess Run Coal Co. (C. C. A. 4th) 3 F.(2d) 805."

See, also, Scriven v. North (C. C. A.) 134 F. 366; Bronx Fire Ins. Co. v. Wasson (C. C. A.) 62 F.(2d) 556; Childs v. Ultramares Corporation (C. C. A.) 40 F.(2d) 474; Weaver v. Atlas Oil Company (C. C. A.) 39 F.(2d) 847; United States v. Amalgamated Sugar Company (C. C. A.) 48 F.(2d) 156, 157; Williams v. Southern Cotton Oil Co. (C. C. A.) 45 F.(2d) 387; Mellon v. Mertz, 58 App. D. C. 302, 30 F.(2d) 311; Western Electric Co. v. Pacent Reproducer Corporation (C. C. A.) 37 F.(2d) 14; Dyar v. McCandless (C. C. A.) 33 F.(2d) 578.

Nor was this interlocutory order appealable under 28 USCA § 227. Grand Beach Co. et al. v. Gardner et al. (C. C. A.) 34 F.(2d) 836. Even if appealable under that section, the appeal was not taken within thirty days from the entry of the order, as required by the section. The order appealed from was filed October 19, 1933; the petition for appeal was not filed until January 18, 1934.

We are also of the opinion that the Millers, as interveners, were estopped from prosecuting their appeal. One may not intervene in a suit, seeking the aid of the court, and at the same time attack the court's jurisdiction. As was said by Judge Waddill, of this court, in Union Trust Company v. Jones, 16 F.(2d) 236, 239:

"In any event, appellant itself, an intervener in the same litigation to assert its unsecured indebtedness, was not in a position to make such claim. It could not intervene in and seek the aid of the court and at the same time attack and dispossess the court of its jurisdiction to proceed with the litigation in an orderly way. Equity Rule 37 [28 USCA § 723] * * *"

See, also, Pillinger v. Beaty (C. C. A.) 265 F. 551; Whittaker v. Brictson Mfg. Co. (C. C. A.) 43 F.(2d) 485; In re Veach (C. C. A.) 4 F.(2d) 334; King v. Barr (C. C. A.) 262 F. 56; First Trust Company v. Illinois Central Railroad Company (C. C. A.) 252 F. 965; Talbot v. Mason (C. C. A.) 125 F. 101; Albright v. Oyster (C. C. A.) 60 F. 644; Root v. Mills (C. C. A.) 168 F. 688.

The Millers in their petition asking leave to intervene set up that it was desirable to have a receiver appointed for the Silica Gel Corporation and at the time of the appointment of Hockley, as receiver, approved of the appointment. It was only after the court refused to appoint one of them (Ernest B. Miller) as coreceiver that they began their attack upon the bill of complaint. A study of the record forces us to the conclusion that the course of these interveners, after they found that one of them would not be appointed by the court as coreceiver, was inspired by that fact and that they otherwise would have been in full accord with the receivership and the purposes of the suit. Such a course of action does not meet with much favor in a court of equity.

With regard to that section of the first order denying the motion for a trial by a jury, it must be conceded that in this respect also the order is interlocutory. Cox v. Graves, Knight & Graves, Inc., supra; Bronx

Fire Ins. Co. v. Wasson, supra; U. S. v. Amalgamated Sugar Company, supra. See: Childs v. Ultramares Corporation, supra; Weaver v. Atlas Oil Company, supra, and cases there cited.

If the suit is properly one in equity, the submission of an issue to a jury is within the trial court's discretion and the action of the court is not reviewable in the absence of an abuse of that discretion. Barton v. Barbour, 104 U. S. 126, 26 L. Ed. 672; Idaho & Oregon Land Imp. Co. v. Bradbury, 132 U. S. 509, 10 S. Ct. 177, 33 L. Ed. 433; Kohn v. McNulta, 147 U. S. 238, 13 S. Ct. 298, 37 L. Ed. 150; Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232; Pacific Coal & Transportation Co. v. Pioneer Mining Co. (C. C. A.) 205 F. 577; Federal Reserve Bank v. Idaho Grimm Alfalfa Seed G. Ass'n (C. C. A.) 8 F.(2d) 922; Schnaubert v. Tippett (C. C. A.) 29 F.(2d) 230; People of Porto Rico v. Livingston (C. C. A.) 47 F.(2d) 712; Steinfur Patents Corporation v. Meyerson (C. C. A.) 49 F.(2d) 765; Small v. Gilbert (D. C.) 56 F.(2d) 616.

■ If an issue is submitted to a jury in an equity suit, the jury's verdict is merely advisory and not binding upon the chancellor.

For the reasons above given and in view of the authorities cited, the appeal of C. Wilbur Miller and Ernest B. Miller will be dismissed.

With respect to the appeal of the interveners Merrell and Brown the record shows that these interveners did not move to dismiss the bill nor join in the motion, but they did, however, assign as error the action of the court in overruling the motion to dismiss.

It is conceded that the order allowing the claim of the Pyrites Company in the sum of $25,626.46 is a final order and therefore appealable. These interveners were allowed to intervene for the purpose, among others, of contesting this claim, and, while they are the owners of a comparatively insignificant number of the shares of stock of the Silica Gel Corporation, the court accorded them every opportunity to present their contentions.

The court below in his opinion showed a very proper consideration for the rule laid down by the Supreme Court of the United States concerning the appointment of receivers on the application of an unsecured creditor. In the case of Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 144, 77 L. Ed. 355, 85 A. L. R. 128, Mr. Justice Cardozo said:

"True indeed it is that receivers have at times been appointed even by federal courts at the suit of simple contract creditors if the defendant was willing to waive the irregularity and to consent to the decree. This is done not infrequently where the defendant is a public service corporation and the unbroken performance of its services is in furtherance of the public good. Re Metropolitan Railway Receivership, 208 U. S. 90, 109, 111, 28 S. Ct. 219, 52 L. Ed. 403. It has been done at times, though the public good was not involved, where legitimate private interests might otherwise have suffered harm. United States v. Butterworth-Judson Corp., 269 U. S. 504, 513, 46 S. Ct. 179, 70 L. Ed. 380; Kingsport Press v. Brief English Systems (C. C. A.) 54 F.(2d) 497, 501; Harkin v. Brundage, supra, 276 U. S. 52, 48 S. Ct. 268, 72 L. Ed. 457. We have given warning more than once, however, that the remedy in such circumstances is not to be granted loosely, but is to be watched with jealous eyes. Michigan v. Michigan Trust Co., 286 U. S. 334, 345, 52 S. Ct. 512, 76 L. Ed. 1136; Harkin v. Brundage, supra. * * * It is one thing for a creditor with claims against a corporation that is legitimately his debtor to invoke the aid of equity to conserve the common fund for the benefit of himself and of the creditors at large."

In the case of Newberry et al. v. Davison Chemical Company et al., 65 F.(2d) 724, 729, certiorari denied 54 S. Ct. 75, 78 L. Ed. ——, Judge Parker of this court said:

"Two points raised by appellants require but brief notice. It is said that there was no jurisdiction in equity to appoint receivers, because the claim of the Davison Chemical Company had not been reduced to judgment and execution returned unsatisfied. The answer to this is that the defendants admitted the allegations of the bills and consented to the appointment of receivers. Under such circumstances, the obtaining of judgment and return of execution need not be shown, as the defense of adequate remedy at law was waived. In re Metropolitan Ry. Receivership, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403; Central Trust Co. v. McGeorge, 151 U. S. 129, 14 S. Ct. 286, 38 L. Ed. 98; Pillinger v. Beaty (C. C. A. 4th), 265 F. 551; Cincinnati Equipment Co. v. Degnan (C. C. A. 6th) 184 F. 834; Horn v. Pere Marquette Ry. Co. (C. C.) 151 F. 626, 633."

■■ The fact that there was express consent by the defendant corporation, in its answer, to the appointment of a receiver waives the lack of jurisdiction. In re Metropolitan Railway Receivership, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403.

The petition for intervention filed by C.

Wilbur Miller and Ernest B. Miller alleges the desirability of the appointment of a receiver and had the effect of a stockholders' bill and would, in connection with the answer of the Silica Gel Corporation, have justified the action of the court below. A careful study of the record convinces us that the chancellor, throughout the entire proceedings, acted with a careful regard for the best interest of all concerned and that the court had jurisdiction of the cause in equity. It is a significant fact that all of the creditors of the Silica Gel Corporation, eighty-seven in number, seemed satisfied with the proceedings in the suit and with the progress of the receivership as no one of them has taken any objections or filed any exceptions to what has been done. Only a very small minority of the stockholders has protested in any way and, as we have said, these protesting minority stockholders, or at least some of them, seem to have been motivated in their course by personal considerations.

Holding as we do that the court had jurisdiction in equity on the pleadings, it therefore follows that the motion to try the issue, as to the plaintiff's claim, by jury, was addressed to the sound discretion of the judge and, as we have already said, his action is not reviewable in the absence of an abuse of that discretion. Here there was no abuse of discretion.

The interveners did not sustain their allegations that there was fraud and collusion in the application for the receivership and the consent of the board of directors, over the protest of the Millers, to the receivership. The chancellor who heard the evidence and saw the witnesses found that there was nothing wrong or improper proven in the case and a study of the evidence convinces us that he reached the proper conclusion. It is fundamental that unless clearly wrong the findings of a judge under these circumstances will not be disturbed.

Finally, with regard to the allowance of the claim of the plaintiff company, we think the judge below was clearly right. The facts as found by the judge with regard to the transaction out of which grew the claim of the Pyrites Company are as follows:

"The Silica Gel Corporation agreed to install a refrigerating or moisture absorbing plant for the Pyrites Company at Wilmington. It was installed at a cost of something like $40,000.00. It did not operate satisfactorily. The original contract had certain guarantees in it. The Pyrites Company or-dered it taken out. The Silica Gel agreed to take it out. And as a consequence of it not having worked satisfactorily the Pyrites Company presented a claim for damages, and as has just been said, the claim consisted of, first, a demand for the return of the purchase price, the cost of installation paid to the Silica Gel, and a demand for incidental or consequential losses and damages said to have been sustained by the Pyrites Company by virtue of having tried the plant under the guarantees and representations as to what it would do. Then ensued conferences between the representatives of the different companies with regard to a settlement of that claim. The cost of installation which had been paid to the Silica Gel was agreed to be refunded, or refunded less the cost to the Silica Gel of installing an ammonia plant in substitution for Silica Gel. This item was paid by Silica Gel.

"Now, the Pyrites Company claims that the settlement agreed upon was that the incidental damages or consequential damages referred to should likewise be paid, and that the amount so to be paid was agreed to as a result of the negotiations."

The judge further found that the president and managing vice president of the Silica Gel Corporation conferred with a representative of the Pyrites Company in New York and that a definite agreement was reached with regard to a settlement with the Silica Gel Corporation. Later a statement of this account, in accordance with the agreement, was forwarded to the Silica Gel Corporation. This statement was O. K.'d by C. Wilbur Miller and Ernest B. Miller and was carried for a number of months on the books of the Silica Gel Corporation as a fixed liability. At no time did either of the Millers, the president and the managing vice president of the Silica Gel Corporation, deny the correctness of the statement in any communication to the Pyrites Company, and in his letter of July 28, 1931, C. Wilbur Miller wrote the representative of the Pyrites Company as follows:

"I wish to acknowledge your letter of the seventh, and I have no desire whatsoever to carry on the discussion with regard to the Wilmington Plant any further—except to request that we be allowed to defer the settlement until our collection period in the fall, when funds will be coming in from our collections. * * *

"I had no intention of in any way going back on the understanding reached at the

Union League Club before you and Gray sailed."

In Baltimore & O. R. Co. v. Berkeley Springs & P. Ry. Co. (C. C.) 168 F. 770, 775, the court said:

"It is not necessary that the acknowledgment of an account's correctness should be either set forth in writing or be made in express words in order to constitute it an 'account stated.' Evidence of assent to its correctness may be inferred where no denial of it is made within a reasonable time after it has been rendered and received, as also from the subsequent conduct and acts of the parties in regard to it."

In Standard Oil Company v. Van Etten, 107 U. S. 325, 1 S. Ct. 178, 185, 27 L. Ed. 319, it is held:

"An account rendered becomes an account stated, unless objected to within a reasonable time; that what constitutes a reasonable time in such a case is a question of law; and that an account stated cannot be impeached except for fraud or mistake."

See, also, Wiggins v. Burkham, 10 Wall. 129, 19 L. Ed. 884; Freeland v. Heron, Lenox & Company, 7 Cranch, 147, 3 L. Ed. 297; Leather Manufacturers Nat. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811; Williston on Contracts, §§ 1862, 1863.

A mere claim for unliquidated damages cannot form the basis of an account stated where there has been no actual settlement or adjustment between the parties, but where there has been a definite agreement of compromise and settlement, as to which the minds of the parties have met, such agreement may form the basis for an account stated. Compromises of disputed claims are favored by the court and, when fairly entered into, are final. Hennessy v. Bacon, 137 U. S. 78, 11 S. Ct. 17, 34 L. Ed. 605; Williams v. First Nat. Bank, 216 U. S. 595, 30 S. Ct. 441, 54 L. Ed. 625; Virginia Shipbuilding Corp. v. U. S. Shipping Board (D. C.) 292 F. 440; Sears v. Grand Lodge, 163 N. Y. 374, 57 N. E. 618, 50 L. R. A. 204.

Here the evidence clearly sustains the findings of the judge that there was such a compromise agreement fairly entered into and the finding as to the claim of the Pyrites Company was correct.

The court below had jurisdiction of the cause in equity and properly refused the motion to submit the issue, with regard to the claim of the Pyrites Company, to a jury. In our opinion, the actions of the chancellor throughout the entire course of this complicated and vexatious litigation were proper and correct. There was no error and the decrees of the court below are accordingly affirmed.