ELDRED et al. v. AMERICAN PALACE-CAR CO. OF NEW JERSEY et al.

(Circuit Court, D. New Jersey. July 28, 1899.)

CORPORATIONS—SALE OF PROPERTY BY MAJORITY OF STOCKHOLDERS—PRELIM-
INARY INJUNCTION.

> A majority of the stockholders of a corporation entered into an agree-
> ment for the sale of all its property to another corporation in considera-
> tion of the payment of its indebtedness and the issuance to its stockhold-
> ers of one share of the stock of the purchaser, which had the same amount
> of capital, in exchange for each two shares they held in the selling corpo-
> ration. The property was transferred, but at the end of two years none
> of the indebtedness of the selling company had been paid, its stockholders
> had not been notified of the sale, nor asked to assent thereto, or to ex-
> change their stock, and it appeared that the selling company had at-
> tempted to sell the stock to which they were entitled under the agreement,
> the proceeds to be paid to a stranger. *Held*, that there was sufficient evi-
> dence of fraud in the transaction to entitle nonassenting stockholders of
> the selling company, on a bill filed for that purpose, to a temporary in-
> junction restraining the purchaser from making any disposition of the
> property pending a final hearing as to the validity of the sale.

On Application for Preliminary Injunction.

Edward Q. Keasbey, for complainants.

Robert H. McCarter, for defendants.

KIRKPATRICK, District Judge. The bill of complaint in this
cause is filed by Byron A. Eldred and others, stockholders in the
American Palace-Car Company, a corporation organized under the
laws of the state of Maine, on their own behalf and for the benefit
of such other stockholders as may elect to join in said suit, asking,
among other things, that the American Palace-Car Company of New
Jersey may be restrained from assigning, transferring, selling, ex-
changing, or in any way disposing of, changing, or altering the
status of any of the patent rights or other property now or for-
merly of the American Palace-Car Company of Maine, including
any equitable or other interest of said company in the palace car
Boston. The bill sets out that the complainants are stockholders
in the American Palace-Car Company of Maine, and that until a
short time prior to the filing of their bill they were ignorant of
the matters complained of therein, and that prior to the bringing
of their suit they had vainly endeavored to have the suit brought
by the said company for the protection of their rights. The bill
recites that the said Maine corporation was organized under the
laws of that state with a capital stock of $1,500,000, consisting of
15,000 shares of the par value of $100 each, the whole of which,
excepting 5 shares, was paid out for the acquirement of certain
letters patent of the United States granted to one Charles J. Sey-
mour, relating to an improvement in railway cars; that the com-
pany began business in 1892, and continued therein until August,
1897; that in May, 1897, a notice was sent to the complainants and
other stockholders in said company, setting out that it was neces-
sary to raise $15,000 in order to meet the pressing obligations of
the company, and requesting each stockholder to loan the com-

pany a sum of money equal to $3 for each share of stock held by them, the loan to be repaid in not less than six months nor more than one year after date, with interest at 6 per cent.; that in response to said request Eldred, one of the complainants, as the holder of 10 shares of the stock of the company, sent to the treasurer $30, and received, under date of June 10, 1897, the note of the company for said amount, payable six months after date, with interest at 6 per cent. On the 9th of June, 1897, the annual meeting of the company was held, which was adjourned from time to time and until August 11, 1897, at which time, by a majority vote of the stockholders, it was resolved to accept the proposition theretofore made by Lawrence S. Mott, Hayward A. Harvey, and Hobart Tuttle, by which all the patents and property of the company should be turned over to the American Palace-Car Company of New Jersey, in consideration of the assumption by the last-named company of the debts of the Maine corporation, and the exchange of one share of stock of the New Jersey corporation for every two shares of the Maine corporation. In pursuance of this resolution, on the 12th day of August, 1897, a bill of sale of all of the personal property of the Maine corporation, together with assignments of their patents and certificates for 7,000 shares of the capital stock of the company, standing in the name of George A. Denham, treasurer, were delivered to Scott Lord, to be held by him in escrow, and delivered to the New Jersey corporation upon their performance of the terms of the agreement, all of which said property was afterwards, on August 23, 1897, transferred by said Scott Lord to Lawrence S. Mott, the vendor named in the agreement, and for which said Mott stated in receipt given by him that he would "deliver one share of the stock of the American Palace-Car Company of New Jersey for two of the above shares of the American Palace-Car Company of Maine; and I further agree to deliver to said Lord one share of the stock of the American Palace-Car Company of New Jersey for every two shares of the American Palace-Car Company of Maine that he shall deliver to me." Prior to such transfer, Mott had agreed to sell all the property of the Maine corporation so to be acquired to the American Palace-Car Company of New Jersey, in which his associates Harvey and Tuttle were directors, upon that company's assumption of the debts of the Maine company, which were stated to be about $29,000, and the delivery to him (Mott) of $1,499,000 of its capital stock, of which he agreed to return to the treasury of the company $250,000, to be held by the treasurer as trustee for the benefit of the New Jersey company.

That Mott did not deliver to Scott Lord any of the shares of the American Palace-Car Company of New Jersey called for in the agreement is evident from the fact charged in the bill, and admitted in the affidavit of Mott to be true, that 14,998 shares of the capital stock of the American Palace-Car Company of New Jersey, together with all the books and papers of said company, were deposited with the State Trust Company of New York, with authority to deliver the same to one Charles D. Hauk, who seems to have been an intermediary for Denham, or his order, on payment of the sum of $60,000

at any time within seven days from the date thereof, May 21, 1898. It is also apparent from an inspection of Mott's affidavit that the debts of the Maine company had not then been paid, for out of the proceeds of sale of such stock the State Trust Company is authorized to pay the debts of the Maine company, a schedule of which was furnished, and which, since the date of the transfer of its assets, had swollen from $29,000 to $35,000. After the payment of these debts, the balance of the $60,000 purchase price for said stock and assets was to be paid to Mr. Charles D. Hauk, to be disposed of as he saw fit, so far as the papers show. It is admitted in the affidavit of Mr. Denham that no notice of the transfer of the assets of the Maine company was given to any of its stockholders, and that no request was ever made that they should exchange their stock for that of the New Jersey corporation on the terms of the proposition. It is not asserted that the assent of any of the stockholders of the Maine company was sought to the proposed sale of its assets held by the New Jersey company.

As the case presents itself on the bill and answering affidavits, it appears that a majority of the stockholders of the American Palace-Car Company of Maine have caused to be transferred to the American Palace-Car Company of New Jersey all of the property and assets of the former company in consideration of an agreement to pay its debts and give its stockholders one half the number of shares in the purchasing company having an equal amount of capital for those which they hold in the Maine company. Although nearly two years have passed since the agreement was made, the debts of the Maine company have not been paid, the stockholders have not been notified of the proposed exchange of stock, nor their assent thereto asked, but in the meanwhile an attempt has been made to sell without their knowledge the stock to which they were entitled, if the contract of sale were valid, as is contended by defendants, and turn over the proceeds of such sale to a stranger. The bill charges fraud, which is denied in the answering affidavits, but actions speak louder than words. It may be that no actual fraud was intended, but to sell a man's property without his knowledge or consent, and appropriate the proceeds to other uses than expressly authorized by him, is not within the limit of fair dealing as prescribed by law. The bill also sets out a scheme devised for mortgaging the property now held by the New Jersey company and acquired from the Maine company, as has been set out, and charges fraudulent intent in regard to same. All of these charges of fraud are denied, and it is alleged in the affidavit of Mr. Denham that the plan was to have the mortgage made by the stockholders, and that, in order to carry out his plan, it was necessary that all stockholders should join therein. Whether Mr. Denham contemplated procuring the assent of all the stockholders of the Maine or New Jersey company he does not say. It is immaterial for the present purpose. The complainants are stockholders in one or the other company, and the plan cannot be carried out without their assent. It is contended on the part of the complainants that the assets of the Maine company could not, by a vote of a majority of stock-

holders, be disposed of in the manner provided in the resolution of August 11, 1897, and that the transfer in accordance therewith is void. It was admitted by defendants' counsel on the argument that, while this is the general rule in regard to the assets of a solvent going concern, it is not applicable to insolvent corporations. If the law be as so contended for, the proofs in the case are not of such a character as to enable me to determine that the case at bar is within the excepted class. It is true that there were pressing claims against the company, and that an effort was being made to raise money by an assessment on the stock. The car Boston, upon which the company had made large outlays, was, subject to certain liens, the property of the company. It does not appear that any effort was made to preserve this equity, or that a judicial sale was resorted to in order to ascertain its value. Messrs. Mott, Harvey, and Tuttle, in a manner unexplained, were permitted to acquire the rights of the company without compensation to it, and hold the car in trust for the New Jersey corporation. The defendants insist that the complainants are estopped by the laws, of Maine (chapter 84, Laws 1891) from objecting to the sale at this time, because that law provides that if, after sale authorized by a majority of stockholders, one fails to file his dissent within two months, he shall be deemed to have assented to such vote. I have not had the opportunity to examine this law to see if any provision is made for notifying nonattending stockholders of the result of any action taken at stockholders' meeting in regard to sale of company's assets. In this case it appears from the affidavit of Mr. Denham that "the Maine stockholders (under the advice of its counsel) have not yet been requested to surrender their stock pursuant to the deal of August 11, 1897, it being considered advisable that some definite arrangement for the payment of the balance of the liabilities of the Maine company should be completed before such transfer should be made to the New Jersey company." Pending the hearing of this cause, many stockholders have filed petitions asking to be joined in this suit as parties, and to obtain the benefit of same. Upon the whole case I am of the opinion that the interests of the complainants and those who have so joined require that the present status of the assets of the Maine company should be preserved until a final hearing of the cause. The preliminary injunction heretofore granted will be continued.