## DES MOINES LIFE & ANNUITY CO. v. MIDLAND INS. CO. et al.

(District Court, D. Minnesota. Third Division. June 8, 1925.)

No. 758.

1. Corporations ⟨⇒⟩ 194—Notice should be given of unusual business to come before annual meeting of stockholders.

It is not usually necessary to give notice of the business to be transacted at a regular annual meeting of the stockholders of a corporation, but it is the better rule that notice be given when some unusual business is to come before the meeting, such as the question of selling all the corporate property.

2. Corporations ⟨⇒⟩ 182 — Solvent corporation cannot sell all its property over objection of single stockholder.

Neither the directors nor a majority of the stockholders have power to sell all the corporate property against the dissent of a single stockholder, unless the corporation is in such condition that it is unable to continue the business for which it was incorporated.

3. Specific performance ⟨⇒⟩ 25—Contract by one corporation for sale of its property and business to another held not specifically enforceable, where not ratified by all its stockholders.

A contract between life insurance companies, by which complainant was to reinsure and take over the business and property of defendant, held not specifically enforceable, where it was not approved by defendant's board of directors, nor by the commissioner of insurance of the state, both of which were required by its terms, nor ratified by all of defendant's stockholders.

In Equity. Suit by the Des Moines Life & Annuity Company against the Midland Insurance Company and others. Decree for defendants.

George A. & O. H. MacKenzie, both of Gaylord, Minn., for plaintiff.

Christofferson, Walsh, Christofferson & Jackson, of St. Paul, Minn., and Karl H. Covell, of Minneapolis, Minn., for defendants.

SANBORN, District Judge. The Des Moines Life & Annuity Company, herein referred to as the Des Moines Company, is and was a life insurance company of Iowa. The Midland Insurance Company, herein referred to as the Midland Company, is and was a life insurance company of Minnesota, organized and promoted by H. W. Strickler, who ever since has been its president, and through stock ownership and proxy control has dominated its affairs.

In the fall of 1924, E. L. Shinnick was the secretary of the Midland Company, and G. K. Henshall its vice president. Mr. Strickler wanted to reinsure its business, and entered into negotiations with the Des Moines Company. These negotiations involved an inspection of the securities of the Midland Company, and the expenditure of time and effort on the part of the officers of the complainant. The result of the negotiations was a contract, dated November 26, 1924, providing for the reinsurance and taking over of the business of the Midland Company by the Des Moines Company.

The contract was signed on behalf of the former by Mr. Strickler, its president, and Mr. Shinnick, its secretary, and on behalf of the latter by its president and secretary. It contained these provisions:

Article 3: "(2) This contract shall become effective, subject to its terms, only when the same has been duly approved (a) by the board of directors and stockholders of the Midland Company; (b) by the board of directors of the Des Moines Company; (c) by the superintendent of insurance of the state of Minnesota; (d) by the insurance commission of the state of Iowa.

"(3) The parties hereto promise and agree that they will with all reasonable diligence proceed to have called and held in the manner and form as required by law the several meetings of the respective companies and will, with all honorable means at their command endeavor to secure the speedy approval of this contract."

On December 15, 1924, notice was sent to the stockholders of the Midland Company,

stating that the regular annual meeting would be held at its office on January 27, 1925, at 2 o'clock p. m. This notice did not state that the question of the reinsurance of the company's business would be considered. At the meeting 204.61 shares of stock were present in person; 6,065.865 shares were represented by proxy. Mr. Strickler had proxies for 5,996.265 shares. The total number of shares of the Midland Company issued and outstanding were 10,000.

A resolution was adopted, which recited that Mr. Strickler, the president, had made his report to the stockholders and recommended to them the consolidation of their company with some other company, or reinsurance of its business, and caused to be read to them the contract with the Des Moines Company. It then authorized and empowered—"the officers of the corporation to execute and deliver *such contract of reinsurance as read,* and/or a contract of reinsurance, and/or consolidation in or with any other life insurance company; such consolidation and/or reinsurance to be in such company or companies as in the judgment of the officers and directors of the corporation shall be for the best interests of the stockholders and policy holders of this company."

The officers and directors were by this resolution empowered to do whatever was necessary to carry the resolution into effect. It was further resolved that the meeting be adjourned until the 16th day of February following, and a copy of the resolution be sent to each stockholder, for the purpose of giving those not present in person an opportunity to be heard on the resolution, or such other resolution as might properly come before the adjourned meeting.

At the meeting on February 16th the number of stockholders present and represented were practically the same. Mr. Strickler controlled the meeting. A resolution was adopted rescinding the action taken at the meeting of January 27th, and laying the matter of reinsurance on the table. Shortly thereafter, the Midland Company, through negotiations by Mr. Strickler, entered into an agreement of reinsurance with the Dakota Life Insurance Company of South Dakota. That contract is not in evidence, but it was conceded by Mr. Strickler in his testimony that he furnished to the Dakota Life Insurance Company the contract entered into with the Des Moines Company, and that that was used as the basis of the reinsurance agreement.

There can be little doubt that Mr. Strickler had at all times the ability to cause the contract with the Des Moines Company to be carried into effect. He chose to transfer the business to the Dakota Company. The reason does not appear, but there is nothing to indicate that it was out of consideration for his stockholders. There is no doubt that, unless there is some insuperable obstacle, a court of equity ought to require defendants in this case to proceed with this agreement. So far as Mr. Strickler is concerned, it would be no more than a matter of common honesty that the agreement should be carried out.

The complainant contends that at the meeting of January 27 the action of the officers of the Midland Company in entering into this reinsurance contract with the Des Moines Company was approved and ratified, and that it then became their duty to submit the contract to the commissioner of insurance of Minnesota for his approval, and that, if that was obtained, to execute the contract in all respects, and it asks that the court order specific performance. The defendants other than E. L. Shinnick, who admits his willingness to have the contract carried out, say that the meeting of January 27 was not called upon proper notice, that the resolution adopted at that meeting did not ratify or confirm the action of the officers in entering into a contract, that in any event the consent of all of the stockholders was necessary to ratify the contract, and that the board of directors never approved it.

[1] It is not usually necessary to give notice of the business to be transacted at a regular annual meeting of the stockholders of a corporation, but it seems to be the better rule, where some unusual business is to be transacted, such as selling all of the corporate property, that notice should be given. 3 Cook on Corporations, § 595. Ratification of the contract, so far as the stockholders present at the annual meeting of January 27, was probably sufficient. The resolution authorized the officers to enter into the contract. If such a resolution had been adopted prior to making the contract, it would hardly be claimed that it was not binding upon those stockholders present or represented at the meeting.

[2] The rule as to the sale or transfer of the entire business and assets of a corporation is well settled:

"Neither the directors nor a majority of the stockholders have power to sell all the corporate property as against the dissent of a single stockholder, unless the corporation is in a failing condition." 3 Cook on Corporations (8th Ed.) 670.

"If the exigencies of its business is not

such as to require a winding up, the general rule is that every stockholder has a right to insist that the enterprise shall continue for the period contemplated when the corporation was created, and the majority of the stockholders cannot arbitrarily abandon the enterprise and sell out the corporate property against the dissent of the minority." 6 Fletcher's Cyclop. Corp. 6823; Eldred v. American Palace Car Co., 96 F. 59.

"While a corporation has general powers to sell or convey its property, and the majority of the stockholders, through the directors, have the .right to control the affairs of the corporation, still the majority are not permitted to exercise the corporate powers to prevent or destroy the original purposes of the corporation, and in the case of a prosperous, going corporation it is not in their power to authorize the sale of all the corporate property, and thereby practically extinguish the existence of the corporation as against the dissent of the minority." 7 R. C. L. 574.

This rule is based on the theory that each stockholder has a right to insist that the corporation shall fulfill the purpose for which it was organized, unless its condition cannot properly permit that to be done.

[3] If Mr. Strickler was the only stockholder of this insurance company, it would be easy to determine the course to be pursued; but under the law the stockholders who were not present at the meeting of January 27 had a right to object to the reinsurance of the business of the company, and could have enjoined the carrying out of the contract. There is nothing in the record to show that that right has ever been lost to them. Therefore a decree requiring specific performance on the part of the Midland Company would not only affect Mr. Strickler and his interest in that company, but it would have the effect of cutting off the rights of the minority stockholders who did not consent, and could have prevented the consummation of the agreement.

It might be urged that there is nothing to indicate that any of the stockholders would have dissented, but it does not seem to me that that is the important question. They had a right to dissent, and they are not parties to this action; but their interest in the company would be affected by a decree.

There is grave doubt, also, whether the court could overlook the fact that the contract was not approved by the Directors of the Midland Company. It was doubtless the omission of a mere formality, but the parties by their own agreement made it a condition to the contract becoming effective, and courts are reluctant to say that conditions inserted by the parties in their own agreement should not be given effect.

In my mind, however, the obstacle which absolutely prevents the entry of a decree requiring specific performance of this contract is the fact that it affects the rights of the stockholders, other than Strickler, who had and have a right to be heard with reference to the reinsurance of the business of the company.

The question of damages in lieu of specific performance was not fully argued. The same difficulty would exist as to granting damages that exists with reference to specific performance.

The contract was never ratified by all of the stockholders. It was never properly and fully the corporate act of the Midland Company. Furthermore, it never became effective by its own terms, not being approved by the board of directors or by the commissioner of insurance. However, if the complainant wishes to pursue that question further, it may do so on a motion for a new trial.

The conclusion, which I arrive at with much reluctance, is that the complainant has not an action for specific performance against the defendant, nor a cause of action for damages against the Midland Company, and that the relief prayed for in the bill of complaint must be denied.

It is so ordered.