In the Matter of FRANCIS M. BACON et al., Copartners under the Firm Name of BACON, STEVENSON & Co., et al., Respondents.

SUSQUEHANNA SILK MILLS, Appellant.

Argued October 6, 1941; decided November 19, 1941.

Robert Nias West, Gilbert Kerlin and Alfred Ogden for appellant. The petitioners are not stockholders. They have no rights under sections 20 and 21 of the Stock Corporation Law (Cons. Laws, ch. 59). (Babcock v. Chicago Rys. Co., 325 Ill. 16; Matter of Morse [Bank of America], 247 N. Y. 290; Skinner v. Home Bank of Brooklyn, 190 App. Div. 187; 230 N. Y. 631; Western R. R. Co. v. Nolan, 48 N. Y. 513; Robinson v. Adams, 81 App. Div. 20; 179 N. Y. 558; Woolf v. Barnes, 46 Misc. Rep. 169; Kissel v. Chicago & Eastern Illinois R. R. Co., 126 App. Div. 852; Pflug v. Dietz, 260 App. Div. 503; Harris Trust & Savings Bank v. Chicago Rys. Co., 23 Fed. Rep. [2d] 192.) Petitioners may not repudiate their agreement to be bound by the action taken by a majority in interest of the voting trust certificate holders. (Babcock v. Chicago Rys. Co., 325 Ill. 16.)

Samuel J. Levinson, Frank Weinstein and Samuel Kalmanash for respondents. Stockholders who deposit their stock with trustees under a voting trust agreement retain their status as stockholders under sections 20 and 21 of the Stock Corporation Law for the purpose of objecting to a bulk sale of the corporation's assets and demanding and receiving payment of the appraised value of their stock. (Rosevelt v. Brown, 11 N. Y. 148; Broderick v. Aaron [Kornberg], 268 N. Y. 260; Lloyd v. Preston, 146 U. S. 630; U. S. Radiator Corp. v. State, 208 N. Y. 144; Flour City Nat. Bank v. Shire, 88 App. Div. 401; 179 N. Y. 587; Wheeler v. Millar, 90 N. Y. 354; Eisner v. Macomber, 252 U. S. 189; Gibson v. Oswalt, 269 Mich. 300; Matter of Morse [Bank of America], 247 N. Y. 290; Matter of Timmis, 200 N. Y. 177; Voeller v. Neilston Warehouse Co., 311 U. S. 531; Kittinger v. Churchill Evangelistic Assn., 239 App. Div. 253.)

LEHMAN, Ch. J.  In proceedings under section 77B of the Bankruptcy Act (48 U. S. Stat. 912), a plan for the reorganization of Susquehanna Silk Mills, a corporation organized under the laws of the State of New York, was confirmed by the District Court of the United States by an order dated February 19, 1936.  All the stock of the corporation issued pursuant to the plan of reorganization has been issued to voting trustees named in a voting trust agreement dated " as of March 16, 1936," which, by its terms, would expire on March 16, 1941.  The plan of reorganization required that the stock should be so issued.  The petitioners hold voting trust certificates issued by the voting trustees for about eight per cent of the corporate stock.  The voting trustees are the holders of record of all the shares of stock of the corporation including the shares for which the petitioners hold voting stock certificates.

On February 19, 1941, the voting trustees, at a special meeting of the stockholders of the corporation, voted all the issued and outstanding stock of the corporation in favor of a sale and conveyance of the assets of the corporation, the liquidation of the corporation and the distribution of the proceeds of the sale after the sale was confirmed. At all times the petitioners have objected to any sale of the assets of the corporation and they have tried unsuccessfully to prevent the trustees from voting the shares, in which these petitioners have a beneficial interest, in favor of the proposed sale.  Upon their petition appraisers have been appointed to appraise the value of their stock in accordance with the provisions of section 21 of the Stock Corporation Law (Cons. Laws, ch. 59).

Section 20 of the Stock Corporation Law sanctions the voluntary sale of corporate assets and the voluntary termination of the corporate existence provided consent is given by the stockholders in manner there provided.  Until the Legislature gave its sanction to such a sale this court by its decisions had " established the law that a corporation cannot sell all its property, or even a part thereof so integral as to be essential for the transaction of its ordinary

business, because such a sale is wholly or partly an act of self-destruction and a practical dissolution without compliance with law." (*Matter of Timmis*, 200 N. Y. 177, 181.) Though the Legislature, in section 20 of the Stock Corporation Law, has conferred upon " holders of record of two-thirds of [the] outstanding shares entitled to vote thereon " of a corporation, the power which they would not otherwise have possessed, to sell the assets and thus to terminate the life of a corporation, it has at the same time provided that a stockholder who makes timely objection to such sale and does not vote his stock in its favor may demand payment by the corporation of the value of his stock as appraised by appraisers appointed by the court. The corporation in this case challenges the right of a holder of a voting trust certificate to claim the benefit of the statute after the voting trustees had voted the stock deposited with them in favor of such sale.

A voting trust creates a " separation of the voting power from the beneficial ownership of stock.". The State may regulate such separation by exercise of the police power. (*Matter of Morse*, 247 N. Y. 290, 303.) By section 50 of the Stock Corporation Law the State has expressly permitted such separation. The voting trustees become the holders of record of the stock deposited in accordance with a voting trust agreement. A stockholder who deposits his stock parts with the right to vote, but he retains the beneficial ownership of the stock. Thereafter, neither the holders of voting trust certificates nor the voting trustees possess all the rights of stockholders. Each group are " stockholders " for some purposes — neither group for all purposes.

In the provisions of the Stock Corporation Law regulating the voluntary sale of the franchise or property of a corporation, the Legislature has recognized this duality of ownership. Only those holders of record of shares who are " entitled to vote thereon " can give consent to a sale of the corporate assets. (§ 20.) Again, in section 45 of the statute, notice of the meeting at which the vote is taken must be given both to " each stockholder of record entitled

to vote at such meeting, *and* to any stockholder who, by reason of any action proposed at such meeting, would be entitled to have his stock appraised if such action were taken."

In final analysis the decisive question in this case is whether the depositor of stock under the voting trust agreement has authorized the voting trustees to vote his stock and thereby to give consent in his behalf to the proposed sale. If the holders of voting trust certificates have authorized the voting trustees to give such consent then they cannot claim any rights accorded by the Legislature to owners of stock who have not consented. If they have not authorized the voting trustees to give such consent the fact that the trustees are the owners of record would not bar the petitioners from the rights accorded to protesting stockholders who have not voted in favor of the sale. The voting trust agreement must be filed in the office of the corporation and the corporation has notice of its terms and the extent of the powers conferred upon the trustees.

We assume, but only for the purposes of this appeal, that under the statute the voting trust agreement could contain provisions authorizing the voting trustees to consent to the destruction of the corporation and of the rights of its stockholders. The power to destroy stock would not, however, be implied merely from a power to vote the stock. Only by the use of clear language can such an extraordinary power be conferred.

The voting trust agreement in this case grants powers in broad language: " During the term of this Agreement, the Trustees shall possess the legal title to, and shall possess and be entitled to exercise all rights of stockholders of every name and nature, including the right to vote or give any consent in respect of any and all such shares of the Capital Stock of the Company as may be deposited with them; provided, however, that at the expiration of three years from March 16, 1936, the Trustees shall call a meeting of the holders of Voting Trust Certificates ,at which meet-

ing such holders in person or by proxy shall be entitled to vote on whether or not the business of the Company shall be liquidated in whole or in part."

The broad language of that provision should not be construed, however, to include power to consent to the destruction of the stock deposited under the agreement. Possible doubt, whether " the right to vote or give any consent in respect of any and all " the shares deposited excludes power to consent to a dissolution of the corporation disappears when that power is read with the condition or proviso that at the expiration of three years a meeting must be called at which the holders of the voting trust certificates should vote whether or nor the business should be liquidated in whole or in part. Such a meeting was called and the stockholders voted against dissolution. An intention to give the voting trustees the power to consent to dissolution of the corporation after the holders of the voting trust certificates had voted against dissolution cannot reasonably be read into the agreement.

It does not follow that the vote which the trustees cast for the sale can be challenged by stockholders who failed to make timely objection, for in this case such failure would be equivalent to a consent or instruction by non-objecting stockholders to vote their stock in favor of the sale of the corporate assets.

The voting trust agreement in this case contains the provision: " The Trustees, in their discretion, shall also be entitled to instructions with respect to voting the shares of stock held by them hereunder, for any and all purposes, except with respect to the voting of such shares for the election and /or removal of directors of the Company and may (but shall not be obligated to) call a meeting of the holders of Voting Trust Certificates, in the manner specified in this Article Ninth, for the purpose of obtaining such instructions; and, except as otherwise provided in this Article Ninth, the vote of the holders of a majority in interest of Voting Trust Certificates, in person or by proxy, irre-

spective of class, with respect to any matters upon which the Trustees shall desire instructions, shall constitute the instructions upon which the Trustees shall act."

Pursuant to that provision the trustees did call a meeting for the purpose of obtaining instructions from the holders of voting trust certificates. Prior to the meeting the trustees sent to each certificate holder information in writing concerning the offer for the purchase of the assets of the corporation and each certificate holder had notice that the trustees would vote the stock standing in their name in accordance with the instructions given by majority vote at the meeting. The petitioners appeared by attorney and challenged the power of the trustees to vote the stock of stockholders who did not assent and objected to the proposal for purchase and sale of the corporate assets. An overwhelming majority of the certificate holders voted in favor of accepting the offer.

A vote by a certificate holder instructing the trustees to vote his stock is obviously a grant of authority even though previously no authority had been granted. Even where no affirmative vote was cast by the holder of a voting trust certificate, but no objection made, the voting trustees might properly assume that the stockholder authorized them to vote his stock in accordance with their own discretion. There would be a duty to speak where the stockholder was apprised by the voting trustees that the voting trustees would assume from silence that the depositing stockholders agreed with their construction that the voting trust agreement conferred upon the trustees authority to vote the deposited stock.

The order should be affirmed, with costs, and the certified questions answered in the affirmative.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Order affirmed, etc.