**In re WESTERN TOOL & MFG. CO.**
**GURNEY v. MASSENA et al.**
No. 9665.

Circuit Court of Appeals, Sixth Circuit.
April 21, 1944.

As Amended on Denial of Rehearing
June 1, 1944.

406

Charles W. Stiefel, Jr., of Chicago, Ill. (George R. Murray, of Dayton, Ohio, on the brief), for appellant.

W. W. Keifer, of Springfield, Ohio (Keifer & Keifer, of Springfield, Ohio, on the brief), for appellee.

Before HICKS, ALLEN and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The Western Tool & Manufacturing Company is an Ohio corporation created in 1904 which since that time has been engaged in the business of manufacturing tools in its own equipped factory at Springfield, Ohio. The corporation has outstanding 1120½ shares of common capital stock, par value $100 per share.

In November, 1921, the corporation borrowed $90,000, and to secure the payment thereof, executed a mortgage trust deed which covered all of its property then in existence or afterwards acquired, except cash, notes and accounts receivable and inventories.

On July 20, 1923, the owners of 602½ shares of the corporation's capital stock created a voting trust and appointed a committee consisting of Charles S. Deneen, W. T. Kettering, W. D. Hollister and Enoch J. Price. The shares were deposited with a trustee in exchange for receipts.

The purpose of the trust was to refund the mortgage indebtedness of the corporation at a lower interest rate and on more favorable terms. The voting trust was to continue until the payment or extinguishment of the mortgage indebtedness or a re-fundment of it, unless it earlier appeared that neither of these objects could be accomplished.

On November 1, 1923, the owners of the corporation's mortgage bonds formed a committee composed of Charles S. Deneen, W. T. Kettering, Edward I. Bloom, E. J. Price and W. D. Hollister. Subsequently, Deneen died and was succeeded by Roy Massena. All bonds, except $300 in amount, were deposited with the depository of the bondholders' committee. The voting trust and bondholders' committee were extant at the time of the institution of this action. Under the corporate charter, the Board of Directors was composed of seven members to be elected at an annual meeting of the stockholders on the fourth Tuesday of January in each year. At a meeting of the stockholders March 28, 1941, the Board of Directors was reduced to five members.

On July 9, 1942, Owen N. Price, trustee under the mortgage deed of trust, filed in the Court of Common Pleas of Clark County, Ohio, a petition to foreclose the lien of the bondholders and on July 15, 1942, the Ohio court appointed W. T. Kettering operating receiver of the corporation's property and since that date he has operated it as a going concern.

The corporation filed its answer to the foreclosure petition admitting its allegations and consenting to the appointment of the receiver. On December 8, 1942, a judgment was entered on the mortgage against the corporation in the sum of $134,698.21, which was the principal sum due on the bonds together with eight percent interest.

James G. Gurney, acting for himself and on behalf of other owners of stockholders' depository receipts of the corporation, attempted to intervene in the state court action and in connection therewith moved that the judgment of the state court be set aside. This motion was pending at the time the present action was instituted and no sale of the corporation's property under the state judgment had taken place.

On January 11, 1943, this action was begun ostensibly with the Western Tool & Manufacturing Company, petitioner, seeking relief under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 526 et seq.

The facts pertaining to the foreclosure action in the state court are fully detailed in the petition in which it is further alleged that the value of the corporation's assets is greatly in excess of its liabilities

and that no adequate relief can be obtained under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. The petition was signed: "The Western Tool & Manufacturing Co. By James G. Gurney." Filed with the petition was affidavit of Gurney in which he stated that he was the owner of seven shares of the corporation's capital stock and was the agent and attorney in fact for Stella K. Gurney, the owner of 66 shares, James Gurney, Jr., owner of 59 shares and Harlan T. Hyde, owner of 443½ shares.

Affiant also stated that W. T. Kettering, W. D. Hollister and Enoch J. Price, for the past three years, had exercised exclusively all the powers and rights of the Bondholders' Protective Committee and that they had likewise exercised all the rights and privileges of the voting trust. He further stated that these same individuals dominated the Board of Directors of the corporation through their own position on the board and by controlling Erna H. Wheeler and William J. Grimm who were employee-directors.

Affiant further said that Enoch J. Price, for the purpose of misleading Harlan T. Hyde, stated in a letter to Hyde that it would be unnecessary for him to attend a stockholders' meeting to be held March 28, 1941, because nothing of importance would be considered then, and that, relying on this statement, Hyde did not attend. At this stockholders' meeting the charter of the corporation was amended reducing the number of members of the Board of Directors from seven to five. Stella G. Gurney, another stockholder, was given no notice of the meeting.

Affiant further stated that the charter of the corporation could not be amended without the attendance in person, or by proxy, of the owners of 673½ shares of the capital stock and that at the meeting held on March 28, 1941, at which the charter was amended, only 648½ shares of stock was represented and at the meeting held March 27, 1942, only 658½ shares of the capital stock were represented, at which meeting a new Board of Directors, now serving, was elected.

Affiant stated that because of the absence of sufficient stock ownership at the stockholders' meeting the election of the directors was void and that the corporation had been without a de jure board since March 28, 1941. Affiant also stated that the trustees of the voting trust had at all times acted adversely to the interest of the equitable owners of the stock and in the interest of the bondholders to the detriment of the corporation.

Affiant further stated that prior to July 20, 1923, the bondholders' committee agreed with the stockholders to cause a refunding of all the corporation's outstanding bonds at an interest rate not exceeding 4%, but that notwithstanding this agreement the trustees of the mortgage recovered 8% interest on said bonds in the foreclosure decree. It is further stated in the affidavit that the interlocking directors, trustees of the voting trust and the bondholders' committee have prevented the corporation from acquiring new, modern and efficient manufacturing equipment and have refused to employ for the corporation capable managers and operators. It is also stated that the voting trust terminated before the institution of this action because of the failure of its purpose and that the depositing stockholders have tendered to the depository of the voting trustees their stock receipts and demanded a return of their stock certificates, all of which has been refused.

Affiant states that the equitable owners of the corporation's stock demanded of the Board of Directors of the corporation that it institute the present action but that the board notified the stockholders that no such action would be instituted and that a sale of the corporate assets would be made under the foreclosure decree in the state court.

The trial court approved the petition as filed in good faith, enjoined the further prosecution of the foreclosure action in the state court and continued the cause for further hearing. Subsequently the bondholders' committee and the corporation by its president and secretary moved to dismiss the petition on the following grounds: (1) that the petition was filed without authority of the Board of Directors of the corporation and without the knowledge, assent or authority of any of its officers; (2) that because of the fact the bondholders were the only creditors of the corporation and that they were opposed to any plan of reorganization, it was impossible of accomplishment; (3) that the petition was not filed in good faith and that James G. Gurney owned only three shares of the capital stock of the corporation and was without authority or legal right to act for and on behalf of the corporation and that said Gurney filed said petition in his attempt to dictate the policy and management of

said corporation for his own personal benefit, and to delay and defeat the corporation in its purpose to pay its bonded indebtedness.

The court heard evidence on the respective motions to dismiss. It made no finding of fact or conclusion of law, but stated, "Upon a consideration of the facts as disclosed by the record in the instant case, the court is of opinion that James G. Gurney and his associates do not bring themselves within the rule laid down in Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827.

"Upon a consideration of the whole of the record, the briefs and arguments of counsel and applicable law, the court is of the opinion and so finds that the motion hereinbefore referred to of the Bondholders' Protective Committee is well taken and it should be and is sustained." The court entered an order dismissing the proceedings from which order this appeal is prosecuted.

Rule 23(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides in substance that in an action brought to enforce a secondary right on the part of one or more shareholders in a corporation because the corporation refused to enforce the right which may be properly asserted by it, the complaint shall be verified by oath and state that plaintiff was a stockholder at the time of the transaction of which he complains or that the shares thereafter devolved on him by operation of law and that the action is not collusive for the purpose of conferring jurisdiction. The complaint shall also set forth with particularity the efforts made by plaintiff to secure from the managing directors or trustees or from the stockholders the action he desires and the reason for his failure to obtain such action or the lack of effort on his part to obtain such action.

The above rule supersedes the decisions of the federal courts on procedural requirements in derivative shareholders' actions. It may be that under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the provisions of the rule in question must yield to state law—Gallup v. Caldwell, 3 Cir., 120 F.2d 90—but as we view the allegations of the petition in connection with the supporting affidavit, there is a substantial compliance with the procedural requirements of the rule insofar as it is applicable and it becomes unnecessary to determine whether or not the local law of Ohio applies. In any event, there is no distinction between the federal and state law material to the decision here. Jensen v. Republic Steel Corporation, 32 Ohio Law Abstract 29. Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "a bill of particulars becomes a part of the pleading which it supplements."

■ Treating the affidavit of Gurney as a bill of particulars, it is clear that he was a shareholder of the corporation at the time of the transactions of which he complains and that the action in no sense could be collusive because he seeks on behalf of the corporation a remedy provided under the laws of the United States and enforceable only in its courts. There can be no doubt that any effort on Gurney's part to secure action by the corporation through its directors or stockholders' committee would have been futile. Under such circumstances, it is unnecessary for the stockholder complainant to set forth with particularity his efforts to secure from the managing directors such action as he desires and the reason for his failure to obtain it. The rule does not apply if from all the circumstances of the case it is made to appear with reasonable certainty that the directors cannot or will not bring the action and that a demand on the stockholders would be futile. Delware & Hudson Co. v. Albany & Susquehanna R. Co., 213 U.S. 435, 452, 29 S.Ct. 540, 53 L.Ed. 862; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 318, 323, 56 S.Ct. 466, 80 L. Ed. 688.

■ A corporate reorganization proceeding under Chapter X of the Bankruptcy Act is instituted by the filing of a petition, the formal requisites of which, as well as other papers filed in the proceedings, are the same in general as similar papers in ordinary bankruptcy actions. General Orders 5, 52, 11 U.S.C.A. following section 53. A petition for the reorganization of a corporation eligible for reorganization under the Act may be filed by the corporation. Bankruptcy Act, Sec. 126, 11 U.S.C.A. § 526.

■ There is no rule enunciated in the statute for intercorporate action authorizing the institution of the proceedings. Whether the equitable owners of the stock of a corporation may institute such proceedings depends upon the laws of the state creating the corporation. In re De Camp Glass Casket Company, 6 Cir., 272 F. 558.

■ Usually directors are the primary source of authority in acting for a corporation in filing a proceeding in bankruptcy reorganization. However, when the Board of Directors refuse to act and it is made to appear that the directors have an interest antagonistic to the corporation, the equitable owners of the stock of a corporation may file the petition under the act on behalf of their corporation. In such a case a bankruptcy court will look beyond the corporate body as a legal entity distinct from its members and disregarding the fiction, will recognize the fact that a corporation is in reality an association of individuals for the purpose of private gain and that though the members have not the legal title to the assets they are nonetheless beneficial owners.

■ Under the laws of Ohio, equitable owners of the stock of a corporation under proper circumstances have the power in the name of the corporation to take advantage of the bankruptcy reorganization statute. Henry v. Jeanes et al., 47 Ohio St. 116, 24 N.E. 1077; Goodin v. Cincinnati & W. Canal Company, 18 Ohio St. 169, 98 Am. Dec. 95; Buckeye Garage Company v. Caldwell, 18 Ohio Cir.Ct.R.,N.S., 429; Jensen v. Republic Steel Corporation, supra. Such a proceeding is the corporation's action, only set in motion, because the corporation was made helpless by the erring directors. Larwill v. Burke, 19 Ohio Cir. Ct.R. 449, 513, affirmed in 66 Ohio St. 683, 65 N.E. 1130.

■ It is an application of the rule that in legal effect a stockholder's suit is one by the corporation, conducted by the stockholder as its representative. In such a proceeding, the corporation is the real party in interest.

Traditionally, corporate reorganization may be effected by a readjustment of the company's securities. It was a common practice prior to the enactment of Section 77B, 11 U.S.C.A. § 207, or of Chapter X, 11 U.S.C.A. § 501 et seq., for a corporation which had issued bonds secured by a mortgage and where the corporation had become embarrassed and unable to pay the interest, to effect a recapitalization by voluntary agreement with the stockholders and bondholders under which the stock and bonds or the bonds only of the company were readjusted so as to enable the company to continue business and avoid foreclosure of mortgages on corporate property, the stockholders sometimes taking new stock of less par value and the bondholders surrendering their bonds in exchange for new ones with readjusted interest rates and maturities and sometimes by refinancing through a new bond issue. Gilfillan v. Union Canal Company of Pennsylvania, 109 U.S. 401, 3 S. Ct. 304, 27 L.Ed. 977. Under such proceedings for voluntary recapitalization directors acted in such matters only with the consent of the stockholders. It was recognized that the stockholders or members of the corporation themselves had the exclusive power to take the necessary steps to bring about a recapitalization.

■■ Chapter X of the Bankruptcy Act was designed to facilitate the recapitalization or reorganization of corporate businesses and for this purpose there was brought within the ambit of the bankruptcy court all of the instruments or methods theretofore used by corporations, creditors and stockholders in effecting recapitalizations or reorganizations. Corporations should not be deprived of the benefits of the Act because their directors are in no position to act freely to obtain them, or will not so act in behalf of the corporation, and to so decide would destroy one of the purposes of the Act.

■ Based on the concept that the primary interest of a stockholder in a corporation is its continuance as a going concern, there is a vast amount of legal literature as to the right of a shareholder to bring a derivative suit on behalf of his corporation but the rule of the right, so far as applicable here, may be stated in brief: (1) Courts will not, at the instance of a stockholder, interfere in the management of a corporation in any case so long as the acts complained of are within the power of the corporation and are the result of the fair and honest judgment of the corporation acting through its officers; (2) Where the acts of which the stockholder complains are within the power of the corporation, but are so injurious to the corporation and through it to at least a part of its stockholders that it is apparent that the corporation has not exercised a fair and honest judgment in the matter, then the courts will interfere but only as a last resort, namely, after the Board of Directors have been given a chance to rectify the wrongful acts if it is made to appear that because of conflicting loyalties or fraudulent conduct, the directors are incapable of acting with fair,

open and unprejudiced minds. Hawes v. City of Oakland, supra; Jensen v. Republic Steel Corporation, supra.

■ We are not here dealing with the details of the corporate business, but with a corporate act which is confiscatory of the rights of its shareholders. Neither the Board of Directors nor a majority of the shareholders may deprive a minority shareholder of his interest in the corporation if there is an equitable way open to protect that interest along with that of all the other shareholders.

■ If there is a valid remedy against the claim of the bondholders in the present case which the Board of Directors could have invoked but which they failed to do and the foreclosure action will damage the interests of the stockholders, the refusal of the board to invoke the remedy would of itself constitute such gross neglect on their part as to require the court to permit their interested cestuis que trustent, the stockholders, to pursue the remedy on behalf of the corporation. Dodge v. Woolsey, 59 U.S. 331, 342, 18 How. 331, 342, 15 L.Ed. 401; Farmers' Loan & Trust Company v. Toledo, A. A. & N. M. Ry. Co., C.C.Ohio, 67 F. 49.

■ Under Chapter X, Section 137 of the Act, U.S.C.A., Title 11, Section 537, a stockholder is expressly given an absolute right to intervene and file an answer to a corporate reorganization petition where the debtor is not insolvent. This is an independent right of a party in interest. Bankruptcy is an equitable proceeding and bankruptcy courts administer the law according to the spirit of equity, so there can be no valid reason why a stockholder, where the necessary prerequisite facts appear, may not either sue or defend on behalf of the corporation in a reorganization proceeding either in his own name or in the name of the corporation. Ogden v. Gilt Edge Mines Company, 8 Cir., 225 F. 723; Zeitinger v. Hargadine-McKittrick Dry Goods Company, 8 Cir., 244 F. 719; Whittaker v. Brictson Mfg. Co., 8 Cir., 43 F.2d 485; United States Lines v. United States Lines Company, 2 Cir., 96 F.2d 148. Since the suit is in equity, an equitable owner of the shares of a corporation has the same rights as a stockholder with the legal title. Fletcher Cyclopedia, Corporations, Permanent Ed., Vol. 5, § 2092, p. 326, and Vol. 13, § 5976, p. 349; Application of Bacon, 287 N.Y. 1, 38 N.E.2d 105.

Prior to the passage of the Act providing for corporate reorganizations, neither proceedings under the prior Act nor receiverships in equity furnished adequate relief for distressed corporate debtors, their creditors and their stockholders. Equity receiverships and foreclosures were inadequate because no method existed for continuing enterprises as going concerns. Usually the intangible assets of corporations were sacrificed in a sale of the tangible property in satisfaction of lien debts, because the property of the corporation as a going concern was sold at an inadequate price and was usually bought in by a committee of bondholders with the result that nonassenting bondholders received little and stockholders nothing at all.

■ The purposes of the legislation were (1) to avoid immediate liquidation of the property involved in the reorganization of a corporation with a view to rehabilitating rather than liquidating, (2) to afford a respite to corporations in financial difficulties so the owners and creditors might have time to recapitalize or refinance and to preserve for all parties concerned intangible values which are usually a part of the assets of all going businesses and inseparable from its tangibles, and (3) to give the holders of bonds of the corporation an opportunity to have it reorganized in lieu of liquidation under foreclosure. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. R. Co., 294 U.S. 648, 55 S. Ct. 595, 79 L.Ed. 1110; Securities Commission v. U. S. Realty Company, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293.

Section 141 of the Act, U.S.C.A., Title 11, Sec. 541, provides in substance that upon the filing of a petition by a debtor, the judge shall enter an order approving the petition if satisfied it has been filed in good faith or dismiss it if not so satisfied.

Section 146 of the Act, U.S.C.A., Title 11, Sec. 546, provides in substance that without limiting the meaning of the term "good faith" a petition shall be deemed not to be filed in good faith if it is unreasonable to expect that a plan of reorganization can be effected or if a prior proceeding is pending in any court and it appears that the interest of creditors and stockholders would be best served in such prior proceeding.

■ The rule is well established that a petition for reorganization under Chapter X of the Bankruptcy Act should be dis-

missed as not filed in good faith within the meaning of Section 146, if there is no reasonable expectation that the company could reorganize as a going concern and the rule also is well established that the party filing the petition under Chapter X while a prior proceeding is pending in a state or federal court has the burden of showing that the interest of creditors and stockholders would be best served by a reorganization in bankruptcy. Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032; Marine Properties v. Trust Company, 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 644.

■■■■ There is no good faith in a petition filed by stockholders in the name of a debtor unless it is shown that under some reasonable plan of reorganization such stockholders would retain an interest because persons without a pecuniary interest have no judicial standing in any court. The existence or nonexistence of good faith in filing a creditor's petition for corporate reorganizations must be determined by the trial court in its discretion upon the evidence. The question is one of fact. In re Mt. Forest Fur Farms of America, 6 Cir., 103 F.2d 69. Since the trial court made no findings of fact and made no reference in its decision to the question of good faith, we do not pass upon that issue, although appellees insist on it. We are of the opinion that under the facts the equitable owners of the stock of the debtor were authorized to institute these proceedings.

The cause is reversed and remanded for further proceedings in accordance with this opinion.

HICKS, Circuit Judge (dissenting).

I find myself out of harmony with the decision. It is a well-settled principle of equity jurisprudence that a stockholder has a right in a plenary suit to seek redress for wrongs done to a corporation where the proper officers thereof refuse to do so, but no such case is presented. Here, a dissatisfied stockholder endeavors, in the name of the corporation, to reorganize it under Chapter X of the Bankruptcy Act. This I think he cannot do. I find nothing in Chapter X that gives jurisdiction to the bankruptcy court for such purpose. From my viewpoint the proceedings under Chapter X are not intended therefor. They are intended for corporation reorganization purposes only; and according to Article I, Sec. 101, the provisions of the Chapter apply exclusively to proceedings thereunder.

Of course a corporation has the right to file a petition for reorganization purposes but I think that the term "corporation" used in Chapter X refers to a corporation in the ordinary sense. It means a corporation as defined in the Act itself. I think that to allow Gurney to use the name of the corporation for reorganization purposes would imply jurisdiction in the bankruptcy court nowhere granted. It would require that court, before it reached the reorganization feature, to settle and determine all the complaints which Gurney, purporting to represent a class, makes against the directors, etc. It is rather clear to me that in his affidavit, attached to the petition, he sets forth enough, which, if properly averred in a bill in equity, would constitute good pleading, but for some reason not altogether apparent, he did not pursue that remedy.

From my viewpoint the appeal should be dismissed.