Bernard Botein, J.
A stockholder of the defendant corporation, which was formed pursuant to a plan of reorganization consummated under the Burchill Act (Real Property Law, §§ 119-123) brings this action to enjoin the defendant Midtown Enterprises, Inc., from selling the Hotel Warwick until it shall have first obtained the consent in writing of the holders of'two thirds of its outstanding stock as provided in section 20 of *824 the Stock Corporation Law. The plaintiff also seeks an injunction pendente lite. The prospective purchaser, A. L. Kirkaby, Inc., has by stipulation of the parties been added as a narty defendant. The defendants, by cross motion, assert that the complaint is insufficient upon its face.
The complaint sets forth that the only property owned by Midtown at this time is the Hotel Warwick; that the board of directors of Midtown authorized the execution of an agreement to sell and convey the hotel, subject to the approval of the court, for the sum of $2,100,000; that at a public hearing held before the court, where the application for leave to consummate the contract above recited was heard, other offers were received, and the highest offer was $2,335,000; that at a special meeting of the board of directors a resolution was duly adopted by a vote of 4 directors to 1, approving the sale at $2,335,000, and that subsequently the court entered an order approving such sale. The complaint further sets forth a paragraph of the mortgage indenture securing the bonds of Midtown which provides that Midtown shall have the right to sell any one or all of its properties, “provided that the company (Midtown) shall apply to the Court for approval in each instance * * * upon at least twenty (20) days’ prior notice in writing to the holders of the bonds * * * and (2) provided further that such application shall be denied * * * if prior to the return date * * * the holders of 33-%% or more in principal amount of the bonds then outstanding file with the Court written objections.” Notice was given as provided above to all bondholders and less than the holders of 33-%% in principal of bonds outstanding voted against the proposed sale.
The complaint appears to be bottomed upon the following premises: First, that the proposed sale violates section 20 of the Stock Corporation Law, which allegedly provides that no such sale can be made by a corporation without the affirmative consent in writing of the holders of two thirds of its outstanding stock entitled to vote; and, second, the allegation that ‘ ‘ the selling price of $2,335,000 is a considerably lower price than can reasonably be obtained in the present market”.
To support the first premise, the plaintiff urges in his brief that he is a stockholder; that the principal business of the corporation is to carry on the business of a hotel; that the proposed sale is not in the ordinary course of business; that the corporation did not procure the affirmative consent, in writing, of the holders of two thirds of its outstanding stock entitled to vote; and that, accordingly, the sale is in conflict with the provisions of section 20. However, he annexes to and makes *825 part of his complaint the order and plan of reorganization, the certificate of incorporation and by-laws of Midtown and the mortgage indenture. These documents clearly refute his allegations, and indicate that the primary purpose of forming Midtown and issuing stock therein to the bondholders was to implement the liquidations mandate implicit in those documents. It was patently intended to create some agency whereby title to the five properties, then constituting the underlying security for the bonds, might be acquired and the properties administered for the benefit of the bondholders until such time as there can be arranged “ a sale of the properties of the corporation upon favorable terms at the earliest practicable time.” (By-laws art. X, § 6.) The certificate of incorporation and the by-laws, explicitly and by reference to the plan of reorganization, carry through the liquidation mandate enunciated and reiterated throughout the plan, which states that the certificate of incorporation shall provide “ that upon the sale of such real property by the corporation such corporation shall be dissolved.” (Art. VIII.)
This was a Burchill Act reorganization for the benefit of bondholders, not for the benefit of the corporation which formerly owned the properties and was in default upon its bonds. It follows, therefore, that such a reorganization would evolve a plan best suited to the needs and desires of a group of investors who chose a form of investment remote from control of and participation in the operation of the corporation owning the equity. The plan presently under consideration, as a practical matter, did not seek to keep control and management of the new corporation in the hands of bondholders who had previously indicated a desire for security of investment in preference to the potentially higher return from stock ownership. The fact that one of the powers recited in the certificate of incorporation of Midtown relates to carrying on the business of hotel and innkeeper does not, as claimed by plaintiff, fix the operation of such an enterprise as the principal business of the corporation. On the contrary, the specific provisions of the plan and of the documents consummating it indicate that this was merely a power which was a necessary incident to ultimate liquidation. In fact, in Matter of Miglietta [2660 Broadway Corp.] (287 N. Y. 246, 249) the purposes and powers of what was concededly a salvage corporation were to “ acquire, manage, sell, mortgage or lease the real property ”.
The liquidation purpose of the plan and the documents consummating the plan render section 20 ineffective in support of plaintiff’s position. The limitations imposed by the Common *826 Law and by section 20 upon the ability to sell corporate property are based fundamentally upon the right of a stockholder to object to virtual dissolution of the corporation through corporate acts of self-destruction which are inconsistent with the corporate purpose. (Matter of Timmis, 200 N. Y. 177, 181; Matter of Bacon [Susquehanna Silk Mills], 287 N. Y. 1, 4; Des Moines Life & Annuity Co. v. Midland Ins. Co., 6 F. 2d 228, 230.) For this reason the sale of corporate realty by a corporation organized for and engaged in the sale of its own real estate does not require the consent of the stockholders. (Epstein v. Gosseen, 235 App. Div. 33; Bassett v. Battle, 253 App. Div. 893; Keating v. Coleman, 214 App. Div. 668.) “ The test applied by the courts is * * * whether the sale is in the regular course of the business of the corporation and in furtherance of the express objects of its existence, or something outside of the normal and regular course of the business.” (Matter of Miglietta [2660 Broadway Corp.], 287 N. Y. 246, 254 supra.) Where, as here, a sale is made “ in furtherance of the express objects ” of the corporation’s existence, section 20 of the Stock Corporation Law does not apply.
Further, this plan of reorganization, under the provisions of section 122 of the Real Property Law (Burchill Act), became binding on all the bondholders by reason of the failure of the holders of one third in principal amount of such bonds to file dissents. Likewise, the provisions of the plan became binding upon the new corporation (Midtown) and upon the persons to whom the stock and bonds of Midtown were issued pursuant to the plan. (See, also, in this regard Real Property Law, § 97.)
However, irrespective of all other considerations, I am of the opinion that section 20 of the Stock Corporation Law must be deemed of sufficient breadth and scope to permit liquidation of a bondholders’ corporation, by means of a previously approved one-third dissent provision, in view of the almost insuperable difficulties implicit in securing a two-thirds affirmative expression from a large and widespread group of bondholder-stockholders. Any remaining doubts as to the legislative intent to permit latitude in the definition of voting rights of stockholders in the manner set out in the plan of reorganization are dispelled by section.51 of the Stock Corporation Law.
With respect to plaintiff’s allegation that the sale price is “ considerably lower * * * than can reasonably be obtained in the present market,” the defendants urge that since the complaint makes no complaint of fraud, bad faith, personal profit or capriciousness on the part of the directors in *827 approving the sale of the hotel, the allegation of inadequacy of purchase price, even could it be sustained, is insufficient. They rely on Blaustein v. Pan Amer. Petroleum & Transp. Co. (293 N. Y. 281); Chelrob, Inc., v. Barrett (293 N. Y. 442); Turner v. American Metal Co., (268 App. Div. 239). These cases indubitably hold that the courts generally will not interfere with the internal management of business corporations. But the corporate action herein sought to be restrained is unique in that under the plan of reorganization and order approving same the court, while not undertaking to impose its business judgment upon the corporation, did, upon invitation, accept the responsibility of passing upon the reasonableness of certain actions of the board of directors.
However, this point need not be discussed at any length. The plaintiff has not heretofore appeared, objected or dissented in the proceedings for approval of the contemplated sale, despite notice of same. He cannot by this collateral plenary action seek to review or frustrate the judicial action of this very court in respect of such proceedings. (McCotter v. Jay, 30 N. Y. 80; Vandercook v. Cohoes Sav. Inst., 5 Hun 641; 8 Carmody on New York Practice, [Part 2], § 883; see Matter of Bacon [Susquehanna Silk Mills], 287 N. Y. 1, 7, supra.)
Ordinarily, I would be inclined to grant leave to serve an amended complaint within a reasonable time. I am persuaded that such a course would serve no useful purpose in this instance, as it is evident from the allegations contained in the papers supporting the motion for the injunction pendente lite and from the lengthy oral argument by the plaintiff’s able counsel that no additional allegations can be pleaded and that the deficiencies of the complaint cannot be cured. In fact, I have already heard and fully considered an identical objection to the sale raised by one of the corporate directors. As I pointed out in the opinion approving the action of the board of directors in accepting the highest offer, it seems to me that such action was reasonable under all of the circumstances. This opinion (Continental Bank & Trust Co. v. W. A. R. Realty Corp., (60 N. Y. S. 2d 595 [affd. 270 App. Div. 577, affd; 295 N. Y. 877, appeal dismissed 295 N. Y. 884] discussed seriatim the contentions urged by the objecting director. Except that the applicability of section 20 of the Stock Corporation Law is raised herein for the first time, the objections of the plaintiff parallel those of the aforementioned director. Their occupy tions are likewise similar, as each is a professional dealer in mortgage securities of the type issued by Midtown.
*828 Briefly, I pointed out in the previous opinion that there had been widespread notice and advertising of the proposed sale, spirited bidding at the sale, that two leading appraisers each appraised the property at less than $2,335,000 prior to the sale, and that an alternative mortgage proposal suggested by the director, even if permissible under the plan, had never materialized in the form of a firm offer. Stating further that the original bonds sold from 12 to 27% cents on the dollar in 1942, and that consummation of the sale will realize for bondholders, on the same basis, approximately 97 cents on the dollar, or 137 cents on the basis of the face value of the new bonds, I held that “ the conclusion of adequacy of price which is implicit in their (the directors’) acceptance of the offer is at least a reasonable one.”
For the foregoing reasons the complaint must be dismissed without leave to amend. And it therefore follows that the motion for an injunction pendente lite is denied.
Settle order.